## Case No. 14,622.

### UNITED STATES v. BOLLMAN et al.

[1 Cranch, C. C. 373.] [1]

Circuit Court, District of Columbia. Jan. 30, 1807.

CRIMINAL PROCEDURE—BENCH WARRANT—INDICTMENT—MESSAGES FROM PRESIDENT—ATTACHMENT—MOTION TO COMMIT—TREASON.

1. This court will issue a bench warrant against a person charged with treason, upon ex parte affidavits, before any presentment or indictment made or found by a grand jury; and, when arrested, will commit him to the prison of this court, without stating when or where he is to answer for the offence.

[Cited in Re McDonald, Case No. 8,751; Ex parte Morrill, 35 Fed. 267.]

[Cited in U. S. v. Eldredge (Utah) 13 Pac. 676.]

2. Upon an application for a bench-warrant on a charge of treason as well as upon a motion to commit for the same cause, messages from the president of the United States to congress may be read.

3. An attachment for not returning a writ of habeas corpus at the appointed time, will not be issued until three days shall have expired after the service of the writ.

4. Upon the motion to commit for trial, the party accused may be heard by counsel.

[Cited in U. S. v. Anon., 21 Fed. 768.]

[5. Cited in State v. Boulter (Wyo.) 39 Pac. 884, to the point that an information verified on information and belief by the prosecuting attorney does not of itself constitute "probable cause supported by affidavit," as provided by Const. art. 1, § 4.]

Mr. Jones, the attorney of the United States for the district of Columbia, moved the court to issue a bench-warrant upon a charge of treason against Erick Bollman and Samuel Swartwout, who had been brought, by a military force, from New Orleans, and detained here under a military guard. This motion was founded upon the affidavit of General Wilkinson, made in New Orleans, and a printed copy of the president's message to congress of the 22d of January, 1807. See 4 Cranch [8 U. S.] Append. note a.

Mr. Jones stated that he made the motion in obedience to instructions received from the president of the United States, whose wish was that they should be surrendered to the civil authority.

Mr. Jones, in support of the motion for a warrant to arrest the prisoners upon the charge of treason, contended that, although the ultimate object of the contemplated expedition might be the conquest of the Spanish province of Mexico, yet if it was also intended to seize and plunder New Orleans, to supply the means of accomplishing the ultimate object, such intent would be treasonable. and the embodying and marching of a military force, with that intent, would be an overt act of levying war against the United States. And that if the prisoners,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

with a view to carry that intent into effect, endeavored to seduce the commander of the United States troops, they were confederates, and liable as principals in the treason, although they themselves should not have personally committed any overt act of levying war.

Mr. Jones read the president's message without any objection by the court.

CRANCH, Chief Judge, expressed a doubt whether the message did in fact announce a levying of war, and if it did, whether the court could proceed in any manner upon such information, without violating the 6th article of the amendments to the constitution of the United States, which declares that no warrants shall issue but upon probable cause supported by oath or affirmation.

Mr. Jones observed that the message announces the actual assemblage of one hundred to three hundred men, and their descent of the river towards the place of their destination; the preparation of warlike stores; and above all it announces that the president has called forth the militia to suppress this enterprise. The calling forth of the militia by the president implies a levying of war against the United States, for he is only authorized to call it forth in case of actual invasion or insurrection. As to the admissibility of the president's message. he observed, that it was not offered as evidence upon the trial, but merely as a matter of public notoriety, of which the court might take notice, and prima-facie presume the existence of such a state of things for the preliminary purpose of issuing a warrant or other process initiative to a prosecution by indictment. Such information is probable cause, and having been given to congress by the president. in the discharge of his official duty, is upon oath.

THE COURT, having some doubt as to the nature of the offence. as it appeared in the affidavit of General Wilkinson, took time until the next day to consider.

On Saturday, the 24th of January, Mr. Caldwell. in behalf of the prisoners, filed a petition for a habeas corpus, stating that they were confined in the city of Washington, at the marine barracks, under a military guard, without just and legal cause, and deprived of the benefit of counsel, or being confronted with their accusers, or of being informed of the nature of their offence; or of the cause of their commitment. This petition was opposed by Mr. Jones, on the ground of its collision with the motion for a warrant of arrest, which was still pending, and which, if granted, would produce the same effect as the habeas corpus.

CRANCH. Chief Judge. stated the opinion of the court to be that. in strictness, before a right existed. to claim a writ of habeas corpus, a copy of the commitment should be produced. or an affidavit that it had been demanded and refused. according to the requisition of the habeas corpus act of 31

Car. II., which the courts have considered as a proper rule to follow in such cases.

Mr. Caldwell, afterwards, on the same day, made affidavit that he had called on Colonel Wharton, the commandant of the marine corps, and requested a copy of the warrant or cause of commitment. who replied that he had no warrant of commitment, but that the prisoners were delivered in the usual military mode, and that they were merely under his care for safe keeping.

Mr. Caldwell stated that he had not seen Mr. Bollman, and should then apply for a habeas corpus for Mr. Swartwout only.

THE COURT ordered the writ returnable on Monday, the 26th of January, at 1 o'clock, p. m.

On Monday, the 26th of January, the habeas corpus, which was ordered on Saturday, not being returned at the time appointed, namely, at 1 o'clock this day, Mr. Caldwell moved for an attachment, and cited the case of Rex v. Winton, 5 Term R. 91, that the court will grant an attachment immediately for want of a return to the first writ. 6 Bac. Abr. 602, tit. "Habeas Corpus"; 3 Tuck. Bl. Comm. 135, and Rex v. Wright, Strange, 915.

Mr. Jones, contra. If the writ be returnable "immediately," yet a reasonable time must be allowed to write the return. If the statute of 31 Car. II has altered the practice by giving an attachment in the first instance, it has altered it also by allowing three days (after service) for making the return. No contempt is intended by Colonel Wharton, for he (Mr. Jones) was occupied on the 25th in assisting him in writing the return, which is not yet finished.

THE COURT (nem. con.) was of opinion that although the practice at common law, before the statute of 31 Car. II., was that an alias and pluries should issue before an attachment, yet that the practice since the statute has been to issue an attachment without an alias and pluries, in cases not within the statute. That this practice has been founded upon the statute. the judges having considered it as furnishing a good rule of proceeding in all cases; and that in adopting the statute as a guide in one respect, viz., in dispensing with the alias and pluries, they also adopted it as a rule in regard to the time of return, viz., in allowing three days to make it; and that, therefore, in the present case, an attachment ought not to be issued until the expiration of three days after the service of the writ.

On the 27th of January. THE COURT (CRANCH, Chief Judge, contra) was of opinion that a bench-warrant should be issued to arrest Erick Bollman and Samuel Swartwout, on the charge of treason.

CRANCH, Chief Judge. said: "I differ from the majority of the court in that opinion, because I do not think that the facts before us, supported by oath. show probable cause to believe that either Dr. Bollman or Mr.

Swartwout has levied war against the United States."

On the 29th of January, Mr. Jones moved that the prisoners, who were now brought in upon the bench-warrant, should be committed for trial upon the charge of treason.

Mr. Rodney, the attorney-general of the United States, objected to the prisoners being heard by counsel, to show cause why they ought not to be committed. He said he objected to it upon principles of humanity, because it would excite a public prejudice against them, if they should be committed after being heard by counsel. The 4th and 8th articles of the amendments of the constitution guaranteed to them an impartial trial. It would be a usurpation, by the court, of the province of the jury. It would be an innovation upon the common practice of the country. This preliminary proceeding is always ex parte. The prisoners might with as much propriety insist on being heard before the grand jury. Respublica v. Shaffer, 1 Dall. [1 U. S.] 236.

C. Lee, contra. To deny a man to be heard by counsel is to deny him a hearing. By the eighth article of the amendments of the constitution of the United States, in all criminal prosecutions, the accused has a right to the assistance of counsel for his defence. It is a serious injury to an innocent man to be committed to prison on a charge of treason. He ought to be permitted to show that, in law, the facts proved do not amount to treason; and that the offence is bailable. In Hamilton's Case, 3 Dall. [3 U. S.] 17, upon habeas corpus, it appeared that he was the only one of the insurgents who had been committed without a hearing, and the attorney-general endeavored to excuse it by the state of the country, and the urgency of the occasion. It would indeed be a great innovation if the prisoners should not be permitted to be heard by counsel. If their counsel can be heard they will contend that the prisoners ought not to be committed at all; and that if they are guilty of any offence, it is bailable.

Mr. Rodney, in reply, lamented the unfortunate situation of the intrepid rescuer of La Fayette, &c., and contended that the court ought not to shut their eyes to the executive communication.

THE COURT permitted the prisoners to be heard by counsel, although FITZHUGH, Circuit Judge, and DUCKETT, Circuit Judge, doubted, as the general practice was to commit in the absence of counsel; but as this was an important case, and a new question, (at least no authority had been cited where an accused person had been denied this privilege,) they inclined to the side of lenity. CRANCH, Chief Judge, had no doubt upon the question.[2]

---

[2] The following note appears in Judge Fitzhugh's note-book: "The grounds of doubt of N. F. and A. B. D., were, that the inquiry for the purpose of committing is different from that to

C. Lee and F. S. Key, for prisoners, contended that the president's communications to congress, although made in the discharge of his official duty, are not evidence to criminate any person in a court of justice. The court must draw its own inferences from facts stated upon oath. This court is in possession of all the facts which the president had before him. This appears from the message itself. But the message itself does not expressly aver that treason has been committed, nor state facts which amount to treason. In all the evidence laid before the court, (the messages of the president of the 22d and 28th of January, 1807, the affidavits

convict. A probable cause to believe that the party is guilty, if supported by oath or affirmation, will justify commitment. This inquiry is to be before a court, and not a jury. This is, therefore, not the stage when the constitution gives him the privilege of counsel as a matter of right, and this may be inferred from comparing the 7th and 8th articles of amendments to the constitution. By the 7th article, 'No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service, in time of war or public danger,' &c. By article 8th, 'in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury, &c., and to have the assistance of counsel for his defence.' These two articles, evidently, cannot apply to the stages of prosecution previous to the impanelling a grand jury, and consequently the personal rights secured by them can extend only to the cases embraced by those articles. The counsel for the prisoners have not contended that the court should now call in the aid of a grand or petit jury, to ascertain their guilt or innocence; and yet the crime with which they are charged is capital and highly infamous. If the constitution does not apply, it is a case unprovided for and is left as it stands by the state laws and practice, and the laws and practice in England. As far as a deduction can be drawn from practice, it is directly opposed to the present application; and no statutory provision on the subject is recollected; nor have the counsel mentioned any. The parties are not now on their trial, nor (in the language of the article cited) are they called upon to answer; but the object of the inquiry is, whether their conduct has been such as would justify the impanelling a grand jury. But if this dilatory mode of proceeding was to prevail, public inconvenience might arise. An accused person would evade even an arrest, by employing counsel to protract the time of a justice, or of the court in attempting to prove that they have no right to issue a warrant; or after arrest there would be frequent opportunities to escape if several days might be consumed in discussing the propriety of discharging, admitting to bail, or committing, and this too in offences of the blackest dye and where bail is not allowable. In this case the court have issued a bench-warrant to arrest the accused, grounded on an affidavit, in preference to vivâ voce testimony; and no doubt was intimated by the bench or the bar; and yet, if the 8th article of the constitution applies, they should have been confronted with the witnesses against them. From all which we infer that the persons accused are not entitled to those privileges to which they are in a more advanced stage of the trial, when innocence or guilt is to be decided by a jury. However, if it is the wish of Dr. Bollman and M. Swartwout to be heard by counsel, we have no strong objections, as it will be the most orderly and decent way of conducting the inquiry.

of Wilkinson, Donaldson, Eaton, Meade, and Wilson,) it does not appear that any person has seen any armed force, any military array, or any embodying and march of troops, or any other overt act of levying of war against the United States; nor is there any evidence of an intent to commit treason. If the projected scheme was to invade Mexico, and for that purpose to seize and plunder New Orleans, and hold it for a short time, and then to give it up to the United States, and to seduce the commander of the United States army to engage in a foreign expedition, it would not be treason. If the prisoners are guilty of any offence, where are they to be tried? No treason is provided; no overt act committed in any place. They have committed no offence here. This court cannot try them. In what court shall they be bound to appear? If it be doubtful whether any treason has been committed, the prisoners are entitled to bail.

Mr. Jones and Mr. Rodney, for the United States, contended that the president's message was evidence of matters of common report, and furnished probable cause. And although the affidavits do not show that war had been levied, yet that defect is supplied by the message, which, being an official message. was under oath, and proved the treasonable intent of seizing upon New Orleans, and that war had been levied; and they relied upon the deposition of General Wilkinson to prove that the prisoners were confederates in the treason. They contended that if the prisoners were guilty of any crime, it was treason, and that therefore they ought not to be admitted to bail.

CRANCH, Chief Judge, delivered the following opinion:

It is the opinion of a majority of the judges that Erick Bollman and Samuel Swartwout should be committed for trial for the crime with which they are charged. It is also the opinion of a majority of the judges that they should not be admitted to bail at present.

Upon the motion heretofore made to this court, by the attorney of the United States, for a warrant to arrest Dr. Bollman and Mr. Swartwout upon the charge of treason against the United States, I thought myself bound to dissent from the opinion of my brethren on the bench, because I did not think that the facts before us, supported by oath or affirmation, showed probable cause to believe that either of the prisoners had levied war against the United States. After further deliberation, and a more mature examination, both of the evidence and the law, my doubts are very much confirmed.

In times like these, when the public mind is agitated, when wars, and rumors of wars, plots, conspiracies and treasons excite alarm, it is the duty of a court to be peculiarly watchful lest the public feeling should reach the seat of justice, and thereby precedents be established which may become the ready tools of faction in times more disastrous. The worst of precedents may be established from the best of motives. We ought to be upon our guard lest our zeal for the public interest lead us to overstep the bounds of the law and the constitution; for although we may thereby bring one criminal to punishment, we may furnish the means by which an hundred innocent persons may suffer. The constitution was made for times of commotion. In the calm of peace and prosperity there is seldom great injustice. Dangerous precedents occur in dangerous times. It then becomes the duty of the judiciary calmly to poise the scales of justice, unmoved by the arm of power, undisturbed by the clamor of the multitude. Whenever an application is made to us in our judicial character, we are bound, not only by the nature of our office, but by our solemn oaths, to administer justice, according to the laws and constitution of the United States. No political motives, no reasons of state, can justify a disregard of that solemn injunction. In cases of emergency it is for the executive department of the government to act upon its own responsibility, and to rely upon the necessity of the case for its justification; but this court is bound by the law and the constitution in all events. When, therefore, the constitution declares that "the right of the people to be secure in their persons" "against unreasonable seizures," "shall not be violated," and that "no warrants shall issue but upon probable cause. supported by oath or affirmation," this court is as much bound as any individual magistrate to obey its command.

The cause of issuing a warrant of arrest, is a crime committed by the person charged. Probable cause, therefore, is a probability that the crime has been committed by that person. Of this probability the court or magistrate issuing the warrant must be satisfied, by facts supported by oath or affirmation. The facts therefore, which are stated upon oath, must induce a reasonable probability that all the acts have been done which constitute the offence charged. The question whether a crime has been committed is a question partly of law and partly of fact. What acts constitute the crime, is a question of law. Whether those acts have been done, is a question of fact. The crime charged, in the present case, is treason against the United States.

The question of law is, what acts constitute that crime? The third section of the third article of the constitution of the United States, says, that "treason against the United States shall consist only in levying war against them, or, in adhering to their enemies, giving them aid and comfort." As it is not contended that the prisoners are guilty under the second clause of the definition, if guilty at all, it must be of treason in levying war against the United States. To a man of

plain understanding it would seem to be a matter of little difficulty to decide what was meant in the constitution by levying of war; but the subtleties of lawyers and judges, invented in times of heat and turbulence, have involved the question in some obscurity. It is not my intention, at this time, to say how far the expression ought to be limited, nor how far it has been extended. It is, however, to be hoped, that we shall never, in this country, adopt the long list of constructive treasons invented in England, by the worst of judges in the worst of times. It is sufficient to say that the most comprehensive definition of levying war against the king, or against the United States, which I have seen, requires an assemblage of men, ready to act, and with an intent to do some treasonable act, and armed in warlike manner, or else assembled in such numbers, as to supersede the necessity of arms. The advocates for the prosecution have not, as I understand, contended for a more unlimited definition than this.

It is unnecessary, and perhaps would be improper, for me, at this time, to say more on the question of fact, than that, in my opinion, there is no probable cause, supported by oath or affirmation, within the meaning of the constitution, to charge either Dr. Bollman or Mr. Swartwout with treason, by levying war against the United States. From some of the doctrines urged on the part of the prosecution, I must, most explicitly, declare my dissent. I can never agree that executive communications not on oath or affirmation, can, under the words of our constitution, be received as sufficient evidence in a court of justice, to charge a man with treason, much less to commit him for trial. If such doctrines can be supported, there is no necessity of a suspension of the privilege of the writ of habeas corpus, by the authority of the legislature. As it is admitted that such communications can not be evidence on the trial, and as an opinion on that point, therefore, cannot be considered as prejudging any question which can occur in a subsequent stage of the prosecution, I have thought proper to be thus explicit on that point. To have said less, I should have deemed a dereliction of duty.

DUCKETT, Circuit Judge, delivered his opinion to the following effect:

He should not make many observations, in addition to what he had remarked on granting the district attorney's motion for a warrant to arrest the prisoners on the charge of treason. Nor should he make any professions of scrupulous attachment to the right of personal liberty in the citizens of our country; because, if the whole tenor of his conduct through life had not evinced such attachment, he felt assured that no professions on his part could, on this point, secure the confidence of the public. He concurred in the sentiment, that no reasons of state, no political motive, should be suffered to influence, in the slightest degree, the decision of the present question; but while, on the one hand, a due regard should be paid to the right of personal liberty in the citizen, we should not be entirely forgetful of the duty we owe to the public, of preserving the constitution and government of the country. That on the question then before the court, he would observe, as he had done when the warrant issued, that he would at that time give no opinion as to what constituted a levying of war within the definition of treason in the constitution of the United States. That it appeared to him unnecessary, if not improper to do so, as he might be called upon to decide the law, in reference to the facts that might appear on the trial of the prisoners. That the only question then to be decided was, whether there was probable cause, supported by oath or affirmation, as required by the 6th article of the amendments to the constitution, to induce a belief that the prisoners were guilty of the crime for which they had been arrested. This question, he said, had been deliberately considered by the court, before the warrant issued, and he thought every thing in this inceptive state of the business, was regularly an ex parte proceeding; he, therefore, had been against permitting counsel to argue on any question, except whether the offence was bailable, and whether, under the circumstances, the court, in their discretion, ought to bail. They had, however, been allowed to argue, in effect, to the utmost latitude, against the propriety of having issued the warrant. To this argument he had given the strictest attention, and could observe with Mr. Fitzhugh, that it would have been well addressed to the jury, if the prisoners had been upon their trial. It had, however, produced no alteration in his opinion, as he still thought there was probable cause appearing to the court to authorize the commitment of the prisoners for trial.

To determine this question, he said let us take a short view of the evidence. The depositions of General Wilkinson prove, unquestionably, the connection of the prisoners with Colonel Burr, in carrying into effect one common intent or plan, and their knowledge of this view. They indeed show, from the acts of the prisoners and their own confessions, their immediate agency in the furtherance of this scheme. If, then, it can be shown that Mr. Burr has probably committed treason, their agency and connection with him, while possessing this knowledge of his treasonable views, create the same probability against them, as in the same treason all in this stage of the business must be considered principals.

What, then, was the intention, the quo animo, with which Mr. Burr's expedition was undertaken? This, by General Eaton's deposition, is proved to be the separation of the Western from the Atlantic states, and the

establishment of a monarchy there, of which Mr. B. was to be the sovereign. It is probable. he had another object also in view, the invasion of Mexico; but this does not appear to be distinct from his treasonable plan of dismembering the Union. This treasonable intention is also stated in the confessions made to General Wilkinson, by one of the prisoners. In the pursuit, then, of this object, we find that Mr. B. had actually commenced the expedition, and that he expected to be at Natchez with an armed force at a certain period. It appears, too, from the confessions of the prisoners themselves, that Mr. B. was levying a large body of armed men; and, what may go far to prove their knowledge of, and agency in that business is, that the officer who was to command the first five hundred men, is stated by name. One of the prisoners, also, says that he had written to Colonel Burr for provisions. Should these circumstances, of themselves, not amount to overt acts of levying war, upon which question the judge said he should at that time say nothing, yet when taken in connection with the situation of the country, the state of alarm existing among the people, and the active preparations of defence against an expected attack, they furnished strong primâ facie evidence that they had been followed up by the commission of other acts on the part of Mr. Burr and the prisoners, that would amount to a levying of war within the strictest definition of the terms. Nor is there any thing in the testimony that can positively exclude the inference of an active coöperation on the part of the prisoners in the different measures that are probably imputable to Mr. Burr.

The judge then remarked, that an observation made by himself, on issuing the warrant, seemed not to have been correctly understood by the prisoner's counsel. He had not said, that in the present case, it was necessary to resort to public documents to aid the depositions in furnishing probable cause for the arrest; but he would now observe, as he had then done, that although the depositions did, to his mind, establish a probable cause, on which he could act, yet that this probability was strongly corroborated by the message of the president, and other public documents on the subject. That even admitting that the 6th article of the amendments to the constitution, which provides against general warrants, may require an oath or affirmation, before any warrant can issue, yet he could not subscribe to the doctrine, that the circumstances showing the probable cause, must, in all cases, be contained in the oath or affirmation itself. If this principle be once considered correct, it would, indeed, when taken in connection with the necessity contended for in the present case, of proving, on a question of commitment, the positive existence of the offence charged, be the worst precedent, as it regarded the public safety, that could possibly be established,

though at the same time it might be the most convenient cloak for treason that could be invented. Under this doctrine, even an authenticated record, showing the conviction of Mr. Burr of treason, could it be produced, on the present question would be deemed inadmissible in corroboration of the probable cause contained in the affidavits.

The judge concluded, by observing, that he was opposed to bailing the prisoners; for although the evidence might also have charged them with a misdemeanor, in setting on foot an expedition against a nation at amity with the United States, yet as they had been arrested on a charge of the highest offence against their country, nothing but their persons could be considered an adequate security to the public.

FITZHUGH, Circuit Judge. My extreme indisposition has prevented me. from preparing any remarks in support of the opinion which I am called on to give; but since it has been thought proper, by the members of the court, to assign our reasons for the course which has been pursued, I shall express those sentiments which at present occur to me. This question has been argued, as if it were now before a jury who were called on to convict or acquit the prisoners, without recollecting that we are at that stage where, in the language of the constitution, probable cause, supported by oath or affirmation, is sufficient. This remark is necessary to show that many of the conclusions of counsel are incorrect. In this incipient state the evidence is always ex parte, and such as would be inadmissible at the final trial. A warrant goes forth to apprehend and afterwards to commit, on the suggestion of an individual, supported by oath, that a crime has been committed. The affidavit is made in the absence of the supposed offender, and no more certainty is required than probable cause. By a law of the United States (1 Stat. 112). there must be the confession in open court, or the testimony of two witnesses to the same overt act, to convict one of treason. Whereas, probable cause, supported by oath or affirmation, will authorize issuing a warrant. In no case, whether criminal or civil, is an affidavit evidence at the trial, because taken in the absence of the party against whom it is intended to operate; and yet it has always been considered as sufficient to justify issuing a warrant to arrest. These inquiries obviously occur: 1st. Is there probable cause to believe. that any treason has been committed against the United States, and this supported by oath, &c.? 2d. Are the prisoners implicated in the treason? And 3d, how. whether as principals, or as only guilty of misprision of treason? That there is probable cause to believe that treason has been committed by Colonel Burr, the public rumor and universal alarm, which seems to have convulsed our country from the extremity to the centre, the president's

communications to congress and to the court, afford at least ground of suspicion, and this is supported by the positive oaths of General Eaton, General Wilkinson, Mr. Donaldson, Mr. Meade, and Mr. Wilson, all going to show the origin, existence and progress of Burr's treasonable projects and acts. But here the counsel for the prisoners have insisted that none of this mass of evidence criminates Burr, and have contended that the president's communications are inadmissible. It is not generally by detached parts of evidence, but by a well-connected chain of circumstances, that we arrive at proof; nor can a crime be made out, by the proof of any solitary fact. In a charge of murder, it would not be sufficient to show, that a blow was given from which death ensued; but it is necessary to prove and disclose a particular state of mind. There must be deliberate resentment or ill-will; there must be malice prepense. So in treason, (the case now under consideration,) no degree of violence, however atrocious, no enlisting or marching men, no injury, if limited in its object to personal rivalship, or even extensive enough in point of locality to contemplate or threaten the opposition and destruction of the laws or government of any one of the United States, will amount to treason against the United States. It is the intention, alone, which fixes the grade of the offence. This intention is only to be collected from circumstances; and though the communications of the president do not, of themselves, furnish full evidence of Burr's treason against the United States, yet they must be considered entitled to some weight in leading to the conclusion, that there is probable cause; but when, in addition to this, it is considered that the most solemn obligation is imposed by the constitution on the president, to make communications of this nature to congress, and that he has, also, in further discharge of his constitutional duties, ordered out the militia, which on ordinary and trivial occasions, he is not justified in doing, a person must be strangely incredulous who will not admit that there is probable cause of suspicion, that a dangerous insurrection or treason exists in our country. A report thus sanctioned by duty and oath, if made to this court, by one of its officers, would be respected, and why shall not a communication from the first executive officer of the Union be credited, when he announces to the nation, information in the line of his duty? But this general ground of alarm is rendered more specific by the affidavits which have been exhibited to us. If the persons who have been sworn on this occasion are to be believed, (and no one has yet questioned their credibility,) they prove a scheme laid by Burr to usurp the government of the United States; to sever the Western states from the Union; to establish an empire west of the Alleghany Mountains, of which he, Burr, was to be the sovereign, and New Orleans the emporium, and to invade and revolutionize Mexico. That in prosecution of those projects, he wrote a letter to General Wilkinson, the commander-in-chief of the American army, with the avowed object and design of alienating him from his duty, and inviting him to embark in the undertaking, and holding out to him the most flattering and sanguine assurances and prospects of success. Horrid as this attempt was, yet if the information had reached no further, I should have no hesitation in saying, that it would have been nothing more than a conspiracy to commit treason, or some other offence. But when Burr assures Wilkinson that he had obtained funds, and actually commenced the enterprise; that detachments from various points, and under different pretences, would rendezvous on the Ohio the 1st of November, with the first five hundred or one thousand men in light boats, now constructing for that purpose;—when, in addition to this, Wilson and Meade swear that when they left New Orleans, the one the 15th, the other the 19th December, the strongest apprehension and belief universally prevailed among the inhabitants that Burr and his confederates had prepared an armed force, and were marching to attack and plunder the city; and that they knew that Wilkinson was decidedly of opinion, from the most satisfactory information, that Burr was advancing, and, under that belief, he was putting the place in a posture of defence. When this coincidence of circumstances, and this strength of testimony appear, there can be little doubt of the existence and the extent of Burr's views, and of his having embodied and enlisted men, with views hostile to the government of his country, and that he had done acts which amount to levying war on the United States.

Burr's treason, then, being established, we are to inquire whether the prisoners were his confederates. They are represented, under oath, to have been bearers of the duplicates of Burr's letters, in cipher, to Wilkinson, and to possess Burr's confidence; they use arguments in addition to those in the letter, to invite Wilkinson to accede to their views; admit that they have corresponded with Burr on the subject, since their delivery of the letter, that Swartwout informed Wilkinson that Burr, with a powerful association, extending from New York to New Orleans, was levying an armed body of seven thousand men from New York, and the Western states and territories, with a view to carry an expedition against the Mexican provinces, and that five hundred men, under Colonel Swartwout and Major Tyler, were to descend the Alleghany, for whose accommodation light boats had been built and were ready; said that New Orleans would be revolutionized, when the people were ready to join them, and that there would be some seizing.

Here, then, is evidence of a connection

with Colonel Burr of a treasonable nature. What is it? The act of congress defines mis-prision of treason to be, a neglect to disclose the knowledge of a treason. But the prisoners have not only known of the treason, but carried a treasonable letter, knowing its contents; endeavored to further Burr's views and wishes, and to seduce Wilkinson from his duty. The offence exceeds misprision of treason, and as there is no intermediate class of offences of a treasonable nature between misprision and treason, it must be treason.

It has been observed, by the counsel for the prisoners, that no judge could commit on an affidavit made before any other judge. This distinction is certainly new, and I believe unprecedented. In all general warrants for arresting a supposed offender, the direction to the officer is, to bring the party before the person issuing the warrant, or some other justice of peace, &c., which would be, at least, nugatory, if no person could inspect or regard the affidavit, except the person before whom it was made. Therefore, I conclude, that Wilkinson's affidavits, made before justices of the peace of New Orleans, whose commissions appear to be properly authenticated by the secretary of state, are evidence at this stage of our inquiry.

I am, therefore, of opinion, that the prisoners should be committed for treason against the United States, in levying war against them.

NOTE. The order for the commitment of the prisoners was in these words: "The prisoners, Erick Bollman, and Samuel Swartwout, were brought up to court, in custody of the marshal, arrested on a charge of treason against the United States, on the oaths of General James Wilkinson, General William Eaton, James L. Donaldson, Lieutenant William Wilson, and Ensign W. C. Meade, and the court went into further examination of the charge. Whereupon it is ordered, that the said Erick Bollman and Samuel Swartwout be committed to the prison of this court, to take their trial for treason against the United States, by levying war against them, to be there kept in safe custody, until they shall be discharged in due course of law."

The bench-warrant for arresting the prisoners, was in these words: "District of Columbia, to wit: The United States of America, to the Marshal of the District of Columbia, greeting:—[L. S.] Whereas there is probable cause, supported by the oath of James Wilkinson, William Eaton, James Lowrie Donaldson, William C. Meade, and William Wilson, to believe that Erick Bollman, commonly called Doctor Erick Bollman, late of the city of Philadelphia, in the state of Pennsylvania, gentleman, and Samuel Swartwout, late of the city of New York. in the state of New York, gentleman, are guilty of the crime of treason against the United States of America:— These are, therefore, in the name of the said United States, to command you that you take the bodies of the said Erick Bollman and Samuel Swartwout, if they shall be found in the county of Washington, in your said district, and them safely keep, so that you shall have their bodies before the circuit court of the district of Columbia, for the county of Washington, now sitting at the capitol, in the city of Washington, immediately to answer unto the United States of America, of and concerning the charge aforesaid.

Hereof, fail not at your peril, and have you then and there this writ. Witness the Honorable William Cranch, Esq.. chief judge of the said court, this 27th day of January, 1807. William Brent, Clerk. Issued 27th day of January, 1807."

Upon habeas corpus issued by the supreme court of the United States. at February term, 1807, the prisoners were discharged. 4 Cranch [8 U. S.] 75.

[For the trials of Aaron Burr for treason, see Cases 14,692–14,694a.]