UNITED STATES, RESPONDENT, *v.* HORACE S. ELDREDGE, AND ANOTHER, APPELLANTS.

CRIMINAL LAW.—PLEADING.—UNLAWFUL COHABITATION.—Complaint before Commissioner of Supreme Court against defendant for unlawful cohabitation need not allege that defendant is a male person.

SUIT ON BOND.—COMPLAINT BEFORE COMMISSIONER.—Complaint before Commissioner of Supreme Court made upon information and belief is sufficient, and can be offered in evidence in suit upon bond given before such Commissioner by defendant.

ID.—PRELIMINARY EXAMINATION.—Defendant who waives preliminary examination waives defects in complaint upon which he was arrested, and sureties on his bond cannot make such objection when sued on bond.

ID.—BOND OF DEFENDANT.—Recognizance of defendant is sufficient as to description of the offence if it describes the offense in the language of the statute, when sureties are sued on bond.

ID.—BOND OF DEFENDANT.—VARIANCE.—In suit on forfeited recognizance of defendant, it is not a material variance that bond described in the complaint bears no file mark and the one offered in evidence has filing marked upon it.

ID.—POWER OF COMMISSIONER TO TAKE BOND.—Commissioner of Supreme Court, under 18 Stat., 255, has authority to take recognizance of defendant held to answer to charge of unlawful cohabitation.

FORFEITURE OF BAIL.—Under Laws of Utah, 1878, section 409, after forfeiture of bail, the defendant or sureties upon bond may appear, and if the neglect of defendant is satisfactorly excused, the forfeiture may be discharged, and if sureties do not avail themselves of this privilege, they waive all irregularities of which they could have taken advantage under it.

CRIMINAL LAW.—UNLAWFUL COHABITATION.—CONTINUOUS OFFENCE.—Where the cohabitation is by the same man continuously and uninterruptedly with the same women, the defendant can be prose-

cuted but once for offense before indictment; but where cohabitation is continued after indictment, there can be a subsequent prosecution for that offense.

NEW TRIAL.—NEWLY DISCOVERED EVIDENCE.—Newly discovered evidence that is merely a cumulation of evidence given upon trial or that is immaterial and irrelevant is not ground for new trial.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial. The opinion states the facts.

*Mr. Le Grande Young*, for appellants.

*Mr. W. H. Dickson*, for respondent.

BOREMAN, J.:

This is an action upon a recognizance in a criminal case, taken by a United States commissioner, for the appearance of the defendant therein before the district court. A complaint was filed with E. B. Critchlow, a commissioner of this court, on the sixteenth day of February, 1886, by W. H. Dickson, who, being duly sworn, on information and belief complained "that George Q. Cannon, of Salt Lake City, in the County of Salt Lake, Territory of Utah, to-wit, on the twenty-fifth day of March, 1885, at Salt Lake City, in the County of Salt Lake, aforesaid, and on divers days thereafter, and continuously from the day and date last aforesaid until, to-wit, the first day of July, 1885, at said county, did unlawfully live and cohabit with more than one woman, namely, with one Martha Tolly Cannon and with one Emily Little Cannon, and that during all the period aforesaid, at the county aforesaid, he, the said George Q. Cannon, did claim, live, and cohabit with both said women as wives, all of which is contrary to the statutes of," etc. Upon this complaint, he was by the officer brought before the commissioner, who was acting as an examining magistrate; and, an examination being waived by said Cannon, he was held to answer the charge, and was admitted to bail in the sum of $10,000 to appear and answer said charge in the district court. In consideration of the release of said Cannon from custody, the defend-

ants (the appellants herein) executed and delivered their undertaking in writing in said sum of $10,000, as follows:

"*Territory of Utah, County of Salt Lake—ss.:* Before Edward B. Critchlow, Esquire, commissioner of the supreme court of said territory, complaint having been made before said commissioner on the sixteenth day of February, 1886, charging George Q. Cannon with having committed the crime of unlawful cohabitation with more than one woman between the twenty-fifth day of March, A. D. 1885, and the first day of July, A. D. 1885, and said George Q. Cannon having been brought before said commissioner by virtue of a warrant in due form of law issued upon said complaint, to answer thereto, and, upon examination being waived by defendant, said defendant having been held to answer thereon, and admitted to bail by said commissioner in the sum of $10,000, we, Francis Armstrong and H. S. Eldredge, hereby undertake that the above-named George Q. Cannon, defendant, will appear and answer the charge above mentioned in the district court of the third judicial district of said territory, to be holden at Salt Lake City, in said judicial district, on the seventeenth day of March next, or in whatever court it may be prosecuted, and will at all times hold himself amenable to the orders and process of the court; and, if convicted, will appear for judgment, and render himself in execution thereof; or, if he fail to perform either of these conditions, we will pay to the United States of America the sum of $10,000.

"FRANCIS ARMSTRONG,
"H. S. ELDREDGE.

"Executed and acknowledged before me, and approved, this twenty-seventh day of February, 1886.

"E. B. CHRITCHLOW, Commissioner."

"*Territory of Utah, County of Salt Lake—ss.:* Horace S. Eldredge and Francis Armstrong, being each duly sworn, each for himself, says he is a resident and freeholder in said territory of Utah, and is worth the amount specified in the foregoing undertaking, over and above all

debts and liabilities, exclusive of property exempt from execution.                                "FRANCIS ARMSTRONG,

"H. S. ELDREDGE.

"Sworn to and subscribed before me, this twenty-seventh day of February, 1886.

"E. B. CRITCHLOW, Commissioner."

That in consideration of said undertaking, said Cannon was released from custody, but he failed to appear in the district court, as required by the undertaking, and the same was forfeited, and thereupon this action was instituted in the district court against the sureties in the undertaking, these defendants and appellants. The defendants demurred to the complaint, and, that being overruled, they filed their answer. The case was heard by the court, and judgment was given for the plaintiff. The defendants moved for a new trial, which was overruled, and thereupon the defendants appealed to this court from both the judgment and the order overruling the motion for a new trial.

1. The district court is alleged to have committed error in overruling appellant's demurrer to the complaint. The ground of this alleged error is that the complaint charges no offense to have been committed by "a male person with two or more women, the wives, or women held out as the wives, of the accused." If by this is meant that the complaint does not charge that the accused is a "male person," we deem the question to have been settled by the case of *U. S.* v. *Cannon*, 4 Utah, 122, and 116 U. S., 55, and in this respect the complaint is sufficient. The demurrer is general, and under it the allegation that the accused "unlawfully lived and cohabited with more than one woman as his wife" is sufficient. It is not objected that the complaint is ambiguous or uncertain.

2. It is assigned as error that the court below admitted in evidence the complaint made before the commissioner by W. H. Dickson, and upon which the accused was held when the undertaking was given for his discharge from custody. The objection to that paper was that it alleged the crime of unlawful cohabitation against the accused

"upon information and belief."   The portion of the paper
containing the objectionable words is as follows: "Person-
ally appeared before me, this sixteenth day of February,
1886, W. H. Dickson, of Salt Lake City, in the county of
Salt Lake, territory of Utah, who, first being duly sworn,
*on information and belief* complains and says that," etc.
In support of this assignment of error, the appellant cites
us to four Michigan cases and one New York case.   The
latter (*People* v. *Recorder of Albany,* 6 Hill, 429) does
not affect the question.   If it has any bearing whatever, it
is adverse to that of the appellants.   It was a civil case,
wherein the affidavit for the arrest of the defendant al-
leged facts in the alternative, and the court held that this
could not be done.   But it was held, further, that if the
affidavit had shown that defendant owned tangible prop-
erty, and had converted it into something else where it
could not be definitely traced, the affiant might have
added his belief that the avails existed in some of the
forms mentioned in the statute, without specifying which.

Of the Michigan cases referred to, none showed com-
plaints or informations for the arrest of persons for *pre-
liminary examination;* and two of them were civil cases,
in which it is not the policy of the law to allow the
power of arrest to be used except upon clear showing.
We think that the principles of the Michigan cases of
*People* v. *Heffron,* 53 Mich., 529, 19 N. W. Rep., 170;
*Brown* v. *Kelley,* 20 Mich., 27; *Badger* v. *Reade,* 39
Mich., 771; and *Smart* v. *Kimball,* 43 Mich., 443—can-
not be upheld as applicable to complaints or informa-
tions for the arrest of parties for preliminary examination.
This view is supported by the case of *Washburn* v. *Peo-
ple,* 10 Mich., 372, referred to in the case of *Swart* v.
*Kimball, supra.*   It was an application made for a pre-
liminary examination, with a view to holding a party to
answer an indictment.   The affidavit was made upon *be-
lief,* and not upon *knowledge,* and the supreme court of
that state held it to be sufficient.   That adjudication has
not been overruled nor disapproved; but the court, in
making reference to it in *Swart* v. *Kimball, supra,* said:
"That was an information filed after the evidence of

guilt had been made on preliminary examination, and the verification was required only by way of showing good faith in the prosecution, and not to make out a *prima facie* case." An examination of the case will show that the complaint was made with the same purpose as the one in the case before us. In affidavits generally for the arrest of alleged criminals, it is not necessary that they should show a *prima facia* case, but need only set forth facts tending to establish the commission of the offense and the guilt of the defendant, so that "the magistrate is satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it." Laws of Utah 1878, p. 72, section 59. After the arrest, and after the examination of the case then, if there is a *prima facie* case made out against the defendant, the magistrate must hold him to answer to an indictment.

If it were necessary that the affidavit for arrest should be upon knowledge, and not upon information and belief, the criminal laws generally, in this section of the country, would be a dead letter, and especially would this be the case in regard to offenses of this character, where the witnesses are almost exclusively unwilling, and hostile to the enforcement of the law. Mr. Bishop says that the doctrine of the books is that the officer may by warrant cause persons suspected of any crime to be arrested for *preliminary examination*, with a view to holding the party to answer to the charge in the proper court. 1 Bish. Crim. Proc., sec. 225, (3d Ed.); *Blodgett* v. *Race*, 18 Hun., 132. The doctrine laid down by the Michigan courts in the cases referred to may occasionally have been followed elsewhere, as in *Nelson* v. *Cutter*, 3 McLean, 326, and *Smith* v. *Watson*, 1 Cranch, C. C., 311, 312; but the better doctrine, and that which is more generally accepted, is that an affidavit on information and belief is sufficient in such a case: *State* v. *Hobbs*, 39 Me., 212; *In re Lewis*, 31 Kan., 71; 1 Pac. Rep., 283; *Matoon* v. *Eder*, 6 Cal., 57; *Washburn* v. *People*, 10 Mich., 372; *Mitchell* v. *Pitts*, 61 Ala., 219; *U. S.* v. *Bryant*, 111 U. S., 499; *Jackson* v. *Webster*, 6 Munf., 462.

Our territorial statutes regarding informations or complaints are similar to those of New York.   By both Codes it is made the duty of the magistrate, when an information is laid before him of the commission of a public offense, to "examine on oath the informant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them." Crim. Code N. Y., sec. 148; Laws Utah, 1878, p. 72; Criminal Procedure Act, sec. 57. These statutes do not require any formal complaint in writing made out beforehand, although one is usually prepared: *Payne* v. *Barnes,* 5 Barb., 465; *Ex parte Boswell,* 34 How. Pr., 347.   Then, by the sections which follow, (sections 58, 59, Utah Act), when the officer has reduced the statement of the prosecutor to writing, if he "is satisfied therefrom that the offense complained of has been committed, and there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest."   He would not be justified in refusing to do so unless the charge is too indefinitely stated to warrant the belief in the magistrate that an offense had been committed, or that the defendant was the guilty party.   The officer has a limited discretion as to how far he relies on the statement of the party: *Wolfe* v. *Brouwer,* 5 Rob., (N. Y.), 601; *Union Bank* v. *Mott,* 9 Abb., 108.

At the examination, the information or complaint or depositions taken before the issuance of the warrant do not become the basis of the magistrate's action in holding the accused to answer in the district court, but he proceeds to an examination of the witnesses, and then, in pursuance of section 106, if it appears from the *examination* that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, he must order him to be held to answer to the same.   The evidence on the examination need not go beyond enough to show a probable cause: Burr's Tr., 4; *U. S.* v. *Bollman,* 1 Cranch, C. C., 373.   The holding of the defendant to answer to an indictment in the district court is based upon the facts proven at the examination, and not upon the information, complaint, or depositions taken before the issu-

ance of the warrant. If, therefore, the defendant wishes to object to the complaint, information, or deposition, he should do so before the examination is gone into; otherwise he waives all objection to the defects and irregularities therein, or connected with its issuance.

In the present case the defendant made no objection whatever to the complaint. Having made no objection thereto, he went further, and in express terms waived an examination of the case—waived proof of the facts necessary to authorize his being held to answer. This was an admission that the facts would have authorized the officer to hold him. But it was not, of course, an acknowledgment of guilt, nor was it any evidence that could be admitted in evidence against him on his trial; but it certainly was an admission that there was no lack of proof to hold him. A party cannot waive proof, and thereafter set up that there was no proof. At this point the sureties first appear, after the defendant has waived proof. If the principal had waived proof; and thereafter could not gainsay it, we see no reason why the sureties could then come in, and set up a defense which the principal could not set up. They waived whatever he had waived. They cannot go behind his action to obtain ground for their discharge. They stand just where they would have stood if full proof sufficient to hold the accused, had been made before they became parties to the undertaking. We are not now considering what defense the sureties could make in case there had been no proof, no waiver, or no offense charged. But our consideration extends only to the alleged defects in the case as presented; yet if it were possible for the sureties to go behind the action of the principal, and object to the complaint, we have seen that the objection to the complaint could not be upheld, for the reason that a complaint or deposition made upon information and belief is sufficient where the purpose is to have an examination of the case with a view to holding the party to answer to the same in the proper court.

We think that it may be a good rule of law that no affidavit would be valid that would not sustain a charge of perjury if taken falsely. But the affidavit here objected

to would, we think, sustain a charge of perjury if taken falsely.   More proof probably might be required to make out the perjury upon it than when the affidavit is based upon knowledge; yet it could be shown.   It would seem needless to call attention to the fact that, if this were not so, a vast amount of verifications, under our Code of Civil Procedure, would be worthless in law as oaths.   The statute expressly authorizes them to be made on information and belief in many instances, and it is not probable that the legislature intended to require an oath that was not in law binding, and for the false taking of which the affiant could not be punished.   This, however, is not a new question.   It is one which we think is well settled by the authorities.   The ruling in England at one time was that such oath would not warrant a conviction for perjury if taken falsely; but it was subsequently held differently, and the established doctrine came to be that belief was an absolute term, and would support an indictment, and this we deem is the accepted doctrine in this country: *King* v. *Pedley*, 1 Leach, 327; 2 Hawk. P. C. (N. A. Ed.) 88; Bac. Abr. tit. "Perjury," 426; 2 Russ. Cr., 597; *Com.* v. *Cornish*, 6 Bin., 249; Whart. Amer. Crim. Law, (4th Ed.) section 2201; *State* v. *Lea*, 3 Ala., 602.   But in the case at bar it is immaterial whether the complaint was sufficient or not.   Its defective character cannot be inquired into in the proceedings on the forfeited bond: *U. S.* v. *Evans*, 2 Flip., 605; 2 Fed. Rep., 147; *Hester* v. *State*, 15 Tex. App., 418; *Jones* v. *State*, Id., 82; *Reeve* v. *State*, 34 Ark., 610; *State* v. *Nicol*, 30 La. Ann. pt. 1, 628; *Welborn* v. *People*, 76 Ill., 516.

Indeed, if there had been no affidavit or complaint whatever, and the accused had gone voluntarily before the officer, and given bail for his appearance to answer the indictment, it would have been good.   The giving of the undertaking thus voluntarily would have been a complete waiver of the complaint, deposition, and proof of probable cause, and of all irregularities in the case prior to the giving of the bail.   *Adair* v. *State*, 1 Blackf., 200.   The accused in the present case expressly waived proof of probable cause, and he thereby waived the defects in the com-

plaint, upon which the proof of probable cause was to be made.

3. The undertaking was objected to upon the ground that it did not describe any offense. The complaint charged George Q. Cannon "with having committed the crime of unlawful cohabitation with more than one woman, between," etc. We have already seen, in considering the complaint, that the name "George" is well recognized as that of a male person, and that that is sufficient, without the further allegation that he is a "male person." If it is sufficient in the complaint, there is no reason why it should not be so in the undertaking. The term "unlawful cohabitation" is a common and well-recognized designation of the offense specified in the statute. It is the term used by appellants themselves, in their brief, to designate the crime charged. Indeed, it would be difficult to select other words that, in a general way, would describe the offense so well. If the word "unlawful" be omitted, the language remains as that of the statute, but, the offense being contrary to law, it is "unlawful." The addition, therefore, of the word "unlawful" is only expressive of a fact existing without it, and is not improper, but highly proper. It is an established rule that statutory offenses may in indictments be described in the language of the statute, and it is sufficient: *U. S.* v. *Cannon,* 4 Utah, 122, and cases therein cited, and 116 U. S., 55. If described substantially in the language of the statute, it is sufficient. *U. S.* v. *Simmons,* 96 U. S., 360. The overwhelming weight of authority is that, as a general rule, the recognizance or undertaking need not state the offense with technical particularity. It is wholly unnecessary to go into details. The description set forth in the undertaking in the present case, therefore, is sufficient, without giving the names of the women: *State* v. *Birchim,* 9 Nev., 95; *Tillson* v. *State,* 29 Kan., 452; *State* v. *Terrell,* Id., 563; *State* v. *Merrihew,* 47 Iowa, 112; *Chase* v. *People,* 2 Colo., 528; *Dunham* v. *Wilfong,* 69 Mo., 355; *State* v. *Howley,* 73 Me., 552; *Adams* v. *State,* 48 Ind., 212; *U. S.* v. *Dennis,* 1 Bond, 103; *Barrera's Sureties* v. *State,* 32 Tex., 644; *Com.* v. *Daggett,* 16 Mass., 447; *Com.* v.

*Downey*, 9 Mass., 520; *People* v. *Blankman*, 17 Wend., 252; *People* v. *Baughman*, 18 Ill., 152; *Chumasero* v. *People*, Id., 405; *Young* v. *People*, Id., 566; *State* v. *Rye*, 9 Yerg., 386; *People* v. *Dennis*, 4 Mich., 609; *Daniels* v. *People*, 6 Mich., 381; *Fowler* v. *Com.*, 4 T. B. Mon., 128; *State* v. *Williams*, 17 Ark., 371; *Hall* v. *State*, 15 Ala., 431; *Rich* v. *Colquitt*, 61 Ga., 197; *State* v. *Tennant*, 30 La. Ann., 852; 1 Bish. Crim. Proc., sec. 720, note 1.

4. It is claimed that the undertaking offered varies from that described in the complaint; that the one described in the complaint has no file-mark upon it, whereas that "introduced in evidence bears evidence of having been filed in the court, March 20, 1886." There is no variance. The file-mark is no part of the undertaking. The complaint alleges the filing. That is sufficient. Neither was it necessary for the complaint to quote the file-marks. But it is urged that, notwithstanding the file-mark thereon, the undertaking had not been filed when the forfeiture took place. The court below in its findings says: "Said undertaking was filed in the office of the clerk of this court on the twentieth day of March, A. D. 1886"—and showed that the forfeiture took place on the twenty-ninth day of March, 1886. The rule is well established that where the question is as to the sufficiency of the evidence to sustain the findings, and there is a substantial conflict of the evidence, the action of the court below in granting or refusing a new trial will be upheld: *Du Brutz* v. *Jessup*, 54 Cal., 118; *Lawrence's Case*, 30 Grat., 845; *People* v. *Clawson*, 2 Utah, 502.

The evidence before us is conflicting, and it is such that we do not feel warranted in going behind the findings. The fact that the undertaking bears the file-mark, taken with the fact that the officer is presumed to do his duty, is very strong evidence that the filing was on the day it purports to have been made: *State* v. *Rogers*, 36 Mo., 138. But we do not deem that, so far as these appellants are concerned, the filing was necessary: *State* v. *Davis*, 43 N. H., 600; *Ex parte Neal*, 14 Mass., 205; *State* v. *West*, 3 Ohio St., 509; *Jennings* v. *State*, 13 Kan., 80.

5. It is likewise urged that the undertaking is void because the commissioner had no authority to issue the warrant or to take bail. The position, as stated in the brief of appellants, is that "it is provided that commissioners of circuit courts may take bail, but there is no provision in the laws of the United States in regard to the form of bail, or the manner of taking it. That question, or the practice in regard to that action, is left as at common law. Under the law creating the office of commissioners of the supreme court of Utah Territory, approved June 23, 1874, the commissioners of the supreme court are authorized to exercise the duties of commissioners of the ciruit courts of the United States, and to take acknowledgments of bail. Under this provision it seems that the commissioners would have no right to take bail in a territory of the United States, for the commissioners of the circuit courts could perform no such duties. Their authority and jurisdiction pertained solely to United States courts."

The commissioners of the circuit courts have territorial jurisdiction within the districts where they are appointed. Therefore the commissioners of the supreme court would correspondingly have territorial jurisdiction in the district where they are appointed. The supreme court has no authority outside of Utah Territory, but it has authority throughout the whole of that Territory. It could therefore appoint such commissioners anywhere within the territory. The powers and duties of the commissioners in the territory are similar to that of commissioners of the circuit courts in the states. The commissioners of the circuit courts, "agreeably to the usual mode of process against offenders in such state," may cause offenders to be "arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense." The like authority is conferred upon commissioners in the territory. The commissioners in the states have authority to take bail. Hence the commissioners in the territory have such authority. But the statute empowering the court to appoint commissioners expressly gave them authority "to take acknowledgments of bail." It is intended by the statute authoriz-

ing the appointment of commissioners that the local laws shall be followed, whether that be a United States statute, or in its absence, a territorial statute. The common law does not govern if a statute supplies the necessary regulation or procedure. Thus the authority of the United States commissioners is put beyond question by the language of the statute itself. Commissioners in the states are the ordinary committing magistrates when the offenses are against the laws of the United States: *U. S.* v. *Hand*, 6 McLean, 274; *U. S.* v. *Rundlett*, 2 Curt., 41; *U. S.* v. *Case*, 8 Blatchf., 250; *U. S.* v. *Horton's Sureties*, 2 Dill., 94; 1 Bish. Crim. Proc. (3d Ed.) sec. 226; 1 Abb. U. S. Pr., 362; 2 Abb. U. S. Pr., 174. We see no reason why they are not such in the territory. Of course, so much of the United States statute as refers to the jurisdiction of commissioners in territorial cases has no application to the question before us regarding their authority in United States cases.

It is not, however, at this stage of the case, a material matter whether the commissioners were authorized or not to issue the warrant, and take the bail in the present case. Nor is it material whether the other objections urged against the complaint, the warrant, and the undertaking were valid or not. It is quite clear that the appellants have allowed the time to pass at which they could have made their objections effective, if valid. The responsibility of the sureties attached the moment the party was released, and their liability became fixed by a breach of its conditions—the forfeiture of the undertaking: *People* v. *Penniman*, 37 Cal., 271; *Friedline* v. *State*, 93 Ind., 366; *Furgison* v. *State*, 4 G. Greene, 302; *People* v. *Wolf*, 16 Cal., 386; *McMillan* v. *Dana*, 18 Cal., 347; *State* v. *Ake*, 41 Tex., 166; *Clark* v. *McComman*, 7 Watts & S., 469; *Mishler* v. *Com.*, 62 Pa. St., 59; *Foulke* v. *Com.*, 90 Pa. St., 257; *Ingram* v. *State*, 10 Kan., 630; *State* v. *Reese*, 4 Sawy., 635; *State* v. *Boies*, 41 Me., 344; *Henriques* v. *Dutch, etc., Co.*, 2 Ld. Raym., 1535; *Welland, etc., Co.* v. *Hathaway*, 8 Wend., 481; *Stever* v. *Sornberger*, 24 Wend., 275.

Our territorial statute, however, provides that notwith-

standing the forfeiture of the undertaking, if, at any time before the final adjournment of the court, the accused or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture of the undertaking to be discharged upon such terms as may be just: Laws of Utah 1878, p. 148, sec. 409.   The appellants have not, however, concluded to avail themselves of the privileges offered by this statute.   We think they have waived all the irregularities of which they could have taken advantage under it.   We know of no authority for the court to entertain such excuse after the adjournment of the term, which took place a few days after the forfeiture: *State* v. *Stout*, 11 N. J. Law, 124; *Gregory* v. *Levy*, 12 Barb., 610; *Levy* v. *Nicholas*, 19 Abb. Pr., 282; *Pierson* v. *Com.*, 3 Grant, Cas., 314.

6. It is claimed by the appellants that unlawful cohabitation is a continuous offense, and that, therefore, the accused could be held for but one offense, and that all bail or undertakings taken for more than one charge for the same offense are void.   This might all be true, and yet, if applicable to the case under consideration, this court would not be in a condition to decide which of the various charges is the correct one, or in which the bail should be held, and in which they should be discharged.   But we do not think that the decision of the cases depends upon any such quandary.   In the case before us, it appears from the findings that, when the undertaking was given, the accused had already, nearly a year previous, been indicted for the crime of unlawful cohabitation with more than one woman, to-wit, with Sarah Jane Cannon, Martha Tolly Cannon, Eliza T. Cannon, and Emily Little, between the first day of April, 1882, and the first day of January, 1885.   In the case before us (No. 6599) it appears that the charge was for unlawful cohabitation with two of these women between the twenty-fifth day of March, 1885, and the first day of July, 1885; and, when the undertaking was forfeited, an indictment had been found against the accused for unlawful cohabitation during that period.   It is contended that this charge, and that mentioned in the indictment of the twenty-fourth of March, 1885, are the same, and consequently both cannot stand.

Since the case was submitted to us, the supreme court of the United States, in the case of *Ex parte Snow*, 120 U. S., 274, has decided that unlawful cohabitation is a continuous offense, and cannot be segregated into different offenses.   That ruling, as we take it from the opinion of the court, is that, where the cohabition is by the same man, with the same woman, continuously and uninterruptedly, the man can be prosecuted but once only; except that, where the cohabitation ·is continued after indictment, there can be a subsequent prosecution, notwithstanding the cohabitation may have continued uninterruptedly from a time prior to the first indictment.   In accordance with that ruling, the indictment of the twenty-fourth March, 1885, is no bar to the prosecution of the accused for unlawful cohabitation committed at any time subsequent to that date, and consequently the matter of the indictment of the twenty-fourth of March, 1885, is wholly immaterial in this case, as the other charge alleges only cohabitation subsequent to the finding of that indictment.   With the matter of that indictment removed from the case, there remains nothing whatever in it to show any other charge than that upon which the undertaking herein sued on was given.   As a consequence, the question of the continuous character of the offense does not properly arise in the case, or at least it went out when the indictment of the twenty-fourth March, 1885, went out.

7. The question as to the newly-discovered evidence, raised on the motion for new trial, cannot affect the case. The newly-discovered evidence, in regard to the filing of the undertaking, is wholly cumulative, and there is no reason offered why it could not, by moderate diligence, have been discovered and furnished at the trial.   But, if the new trial were allowed, such evidence would not be admissible under objection, being immaterial and irrelevant, and such as the sureties cannot set up as a defense.   The sureties waived their right to all of that character of defense by failing to take advantage thereof at the proper time.   The forfeiture of the undertaking fixed the liabilities of the sureties, as we have seen by the authorities elsewhere cited.

8. The appellants refer to the scratching or erasing in

connection with the file-mark.   There is no finding or evidence of anything of the kind, and of course we cannot consider it.   Besides, the remarks made under the last preceding head would apply to such evidence.

We see no reason why the judgment of the lower court should be disturbed.   The judgment is affirmed.

ZANE, C. J., and HENDERSON, J., concurred.