[Crim. No. 3598.    Second Dist., Div. One.    July 13, 1942.]

THE PEOPLE, Respondent, v. VIRGIL JOSEPH NEAL et al., Defendants; ORVILLE STEVEN GRAHAM, Appellant.

Joseph K. Coady and J. Howard Sullivan for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

YORK, P. J.—Appellant and his codefendant Neal were jointly charged in an information with crime of burglary in that on December 16, 1941, they entered the men's furnishing store operated by Harry F. Teeter at Hynes, California, with the intent "to unlawfully and feloniously commit theft." The cause was submitted to the trial court (sitting without a jury) upon the transcript of the preliminary hearing together with additional testimony concerning the purported confessions made by appellant Graham to the arresting officers.

From the judgments of conviction of the crime of burglary of the second degree, appeals were taken by both defen-

dants. The appeal of defendant Neal was dismissed on June 22, 1942, leaving for the consideration of this court the appeal of defendant Graham from said judgment of conviction.

Appellant urges (1) that the court erred in finding him guilty before it determined whether his confession was free and voluntary; (2) that the evidence showed said confession to be involuntary and procured by fraud.

The record herein reveals that when Harry F. Teeter, who operated a men and boy's clothing store at Hynes, California, arrived at his store on the morning of December 17, 1941, he found articles of clothing, jewelry, etc., missing. Upon investigation he discovered the door to the store had been opened and a skylight broken. He testified that he locked the door before leaving the store the previous night and had given no one permission to enter the store; that he checked the items missing and estimated their value at $800; that on December 18, 1941, he recovered practically 100 per cent of the missing articles. On December 18th, Edward A. Fachman, a deputy sheriff, arrested appellant in company with the defendant Neal. At the preliminary hearing said officer was asked if he had a conversation with appellant and defendant Neal at the Norwalk police station after making the arrests (at which time appellant acknowledged he participated in the crime) to which question the witness replied in the affirmative and said that the statements made by appellant were free and voluntary. Appellant's counsel was permitted by the magistrate to propound a few questions to said officer on *voir dire,* after which appellant sought permission to put on evidence showing that the confession was not free and voluntary, to which latter request the objection of the prosecution was sustained. The hearing was continued to January 5, 1942, at which time appellant renewed his said request which was overruled, and at the conclusion of officer Fachman's testimony appellant's motion to strike on the ground that the alleged confession "was obtained by fraud and by duress and by blows," was denied.

On March 2, 1942, when the cause came on for hearing before the trial court, appellant offered to submit the same upon the transcript of the preliminary hearing together with the testimony of three witnesses (then present in the court room). in the event the trial court wished to interrogate them regarding the circumstances under which the appellant confessed to the crime charged against him. The prose-

cution stipulated that the cause might be submitted on the said transcript and that all prosecution witnesses might be excused except the officers who had testified at the preliminary hearing with respect to appellant's confession being free and voluntary.

After reading the transcript of the preliminary hearing, the trial court commented at length upon the conduct of the case, and, among others, made the following remarks:

"There is a very serious question in my mind, gentlemen, as to the ruling made by the magistrate who heard this matter. . . . In fact, the court won't hesitate at this time to state that the magistrate was absolutely in error in not allowing the defendants to put on evidence on *voir dire* as to whether or not these statements were free and voluntary statements. . . . I will have to have additional testimony . . . to clear up a very important point as to whether or not the fundamental rights of these defendants have been invaded here. . . . I assume you will put both your clients on the stand and they will positively pick out a certain man or men, as the case may be, as the man who did the beating up here, if there was any such thing done, and it is a fact those officers should be here to either deny it or admit it, that is the thing, and then it is up to the court to draw his own conclusions. You know, this idea of an officer beating up on a prisoner, sometimes they ask for it, smart kids sometimes go popping off at an officer and the officer will only take so much, but that is not any reason or grounds for an officer to beat a fellow into sub- mission, where he makes the statement that he is going to involve himself. As I say, I want to get all the facts. I do not want to simply go on the statement of an officer here, so far as he is concerned, he does not know of anybody hav- ing beaten up these boys."

Thereafter, the witness Joe Hernandez testified that he and two friends were arrested on December 18th and about eight or eight-thirty that evening were taken to the sheriff's substation at Norwalk and confined in the "tank" there for about two hours, charged with possession of a game-cock. Said witness stated that when he was put in the tank he saw appellant and shortly thereafter officers took appellant away; that about thirty minutes later appellant was brought back and was then "full of blood . . . he says those cops hit him . . . I notice he got blood all over his mouth . . . he was spit-

ting blood . . . and then he cannot speak very good, you see, he say he got some pain in the stomach where the cop hit him . . . and then he was sick''; that appellant was not bloody when taken from the tank.

The witness Garcia testifying through an interpreter stated appellant was in the tank when he arrived a few minutes after eight p. m. of the day in question; that appellant was all right when the officers took him out; that appellant returned in fifteen or twenty minutes ''complaining, with his hand on his cheek bleeding, and then with pain, pointing to his stomach or abdomen.'' Said witness stated he could not speak English and understood about one word in twenty. It was stipulated that the testimony of the third man, Valenzuela, would be the same as that of Garcia.

Appellant was examined on *voir dire* and testified in great detail as to the beating and ill treatment he received at the hands of the deputy sheriffs and officers attached to the Norwalk station; and that finally because he ''was afraid they would take me out and really give me a good beating up, and I said, 'Yes, I was with him (Neal)', and they said, 'That is all we wanted', so then they took me over and put me back in the hold-over tank.''

Two deputy sheriffs took the stand and denied using force or violence on appellant and stated they saw no one else use force or violence on him in order to secure his confession; that they saw no marks, bruises or blood on appellant's person and that he made no complaints to them that force had been used on him. Two officers and the desk sergeant at the station corroborated the testimony of the deputies.

Appellant while on the stand testified that one officer (Foell) punched him in the stomach, while he (appellant) was seated in the chair with his feet on the floor, and knocked appellant six or seven feet without knocking the chair over. Said officer denied this charge and testified he saw no one strike appellant; saw no marks or bruises on his face during the day or night of December 18th.

After argument the cause was submitted, whereupon the trial court commented as follows: ''Well, I am satisfied in this case that there has been no force or violence used, and it does not take any particular courage for this court to say that. I don't know any reason why the court ought to go in the face of the evidence presented here, or to turn around and get a little false courage and say he does not believe

the officers and he believes the Mexicans. . . . Therefore, the court now feels that these confessions are now properly before the court and must stand as they were related by the officers at the time.''

██ From the foregoing it conclusively appears that before the trial court found appellant guilty it permitted him to introduce all the evidence he had available concerning the means by which his confession was obtained, thus effectively curing the error committed by the magistrate's ruling at the preliminary hearing. After hearing and considering the testimony of the police officers the court resolved the conflict created thereby against appellant, and concluded that his confession was free and voluntary. It is not a function of an appellate court to pass upon the credibility of witnesses, and the fact that the trial court believed the police officers rather than appellant and his witnesses was a matter addressed to the sound discretion of the trial court.

The evidence produced at the trial herein amply supports the trial court's judgment.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.