### The STATE of Utah, Plaintiff and Respondent,

v.

### Roger ANDERSON and Thomas E. Brackenbury, Defendants and Appellants.

### No. 16372.

Supreme Court of Utah.

May 29, 1980.

---

S. Rex Lewis of Howard, Lewis & Peterson, Provo, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

The defendants, Roger Anderson and Thomas Brackenbury, bring this appeal from their conviction for tampering with a witness in violation of 76–8–508. We uphold the conviction of Roger Anderson, hereinafter "Anderson," but set aside the conviction of Thomas Brackenbury, hereinafter "Brackenbury." All statutory references are to Utah Code Annotated 1953, as amended.

The factual basis of the jury conviction is relatively simple. The defendants, Anderson and Brackenbury, entered the J & M Saloon, located in Soldiers Summit, Utah, to investigate suspected illegal sale of alcohol. At the time of the incident in question, Anderson was the Chief of Police of Soldiers Summit and Brackenbury was the Justice of the Peace. In the saloon a confrontation ensued between Anderson and the manager of the saloon, James Garner, hereinafter "Garner." During the confrontation a patron of the saloon, Ray Applegate, hereinafter "Applegate," came to the

aid of Garner, who referred to him as his bouncer. However, Applegate testified at trial that upon being informed Anderson was the Chief of Police he returned to his original place at the other end of the bar.

The escalating confrontation ended when Garner struck Anderson in the face. Anderson announced that Garner was under arrest and, although emotionally distraught, left the saloon to enjoin the aid of the police officer then on duty before taking Garner into custody. Once out of the saloon Brackenbury left Anderson and returned to his trailer. Upon enlisting the aid of Officer Butch Curtis, hereinafter "Curtis," Anderson, who was still quite excited from the earlier controversy, reentered the saloon and forcibly detained Garner. In the ensuing scuffle Garner was thrown to the floor, handcuffed and removed from the saloon.

Curtis assumed custody of Garner and proceeded to the Utah County Jail to incarcerate him,[1] while Anderson returned to the saloon in search of the "bouncer" Applegate. After finding Applegate there, Anderson escorted him across the highway to Brackenbury's trailer, which was also used as the Justice Court of Soldiers Summit.

Once inside the trailer, Anderson declared Applegate was under arrest for interfering with an officer in the course of his duty,[2] and Brackenbury proclaimed the Justice Court to be in session. According to the testimony of Applegate, Anderson then proceeded to physically intimidate him into signing false statements[3] concerning the

---

1. Garner was also taken to the Utah Valley Hospital for an examination and x-rays of his shoulder and elbow which he alleged were injured in the scuffle.

2. See *State v. Bradshaw*, Utah, 541 P.2d 800 (1975) (where we held 76–8–305, interfering with a . . . law enforcement official, unconstitutional.)

3. Applegate explained:
 "A. He (Anderson) grabbed me by my shirt and he said, 'Yes, you did it. You seen him strike me,' and picked me up and he tore my shirt across, like that. (Indicating)
 Q. What do you mean he picked you up?

A. Picked me up by my shirt, raised me up out of the chair.
 Q. All right, when he picked you up did he say anything to you?
 A. He said, 'Let me show you some judo, or something or another; and he put his leg out and he pushed me over his leg backwards.'
 Q. What happened to you?
 A. I hit the floor on my back.
 Q. And while you were lying on the floor what happened?
 A. He picked me back up.
 Q: How?
 A. The same way, with my shirt.
 Q. Did he say anything to you while he was doing that?

prior activities in the bar. The first two statements concerned Garner striking Anderson and Applegate's purchase from Garner of liquor, "over the bar," in the J & M Saloon. The third statement recounted the details of the earlier incident in the bar and the arrest of Garner. Applegate testified he signed the false statements because he was scared of possible further violence.[4]

Applegate's account of the incident in the trailer was corroborated by the testimony of Curtis. Curtis testified that upon returning to Soldiers Summit, after delivering Garner, he initiated a conversation with Anderson in which the former explained how he had procured a sworn statement from Applegate concerning the sale of liquor "over the bar" by Garner. When Curtis asked Anderson if the statement was made voluntarily Anderson replied, "Well, I had to rough him (Applegate) up a little bit, but I got the statement."[5]

Subsequently, the defendants were arrested for the crime of tampering with a witness in violation of 76–8–508.[6] The defendants appeared at their arraignment and requested a preliminary hearing. This request was granted and Anderson and Brackenbury were released on their own recognizance.

At the preliminary hearing Garner and Curtis were presented as witnesses for the prosecution. However, instead of presenting Applegate at the preliminary examination, the prosecution moved to introduce Applegate's sworn affidavit relating the essence of his testimony. The prosecution explained Applegate would be present at the trial to testify, but they reasoned the inconvenience of bringing him from his home in Muskogee, Oklahoma, to Utah rendered his absence at the preliminary examination permissible and the admission of his sworn affidavit justified under 77–15–19.[7] The judge agreed with the prosecution's contentions and allowed, over the objection of the defendant, the introduction of the affidavit into evidence. The judge found the evidence presented at the preliminary examination sufficient to bind the matter over to the District Court for trial. At the subsequent trial, the defendants were convicted by a jury of the crime as charged.

The defendants' principal issue on appeal concerns the constitutionality of the procedure employed at the preliminary hearing. Interpreting the recently enacted amendment to 77–15–19 which allows the use of hearsay evidence at the preliminary hearing, the examining judge allowed the prosecution to introduce the sworn affidavit of

---

A. He called me a cotton picking dink.
Q. Did he call you anything else?
A. When he picked me up he called me a—he said that—he said, 'I could kill you with my bare hands, you fat—and—.' "

4. When asked why he did not defend himself from Anderson's attack, Applegate explained: "Because I was scared; He had identified himself in the bar as the Chief of Police, and it was in a court of law, and I couldn't see fighting back in a court of law. Didn't seem like the right thing to do."

5. Curtis also testified that Brackenbury, who was present at the conversation between Anderson and Curtis, stated that Anderson had roughed Applegate up "pretty good."

6. 76–8–508. Tampering with witness—. . . A person is guilty of a felony of the third degree if:
"(1) Believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to:
"(a) Testify or inform falsely; or . . . ."

7. The Amendment to 77–15–19 states:
"(2) The rules of evidence for trial of criminal cases shall apply at the preliminary examination, except that hearsay evidence that would not be admissible at trial shall be admitted if the court determines that it would impose an unreasonable burden on one of the parties or on a witness to require that the primary source of the evidence be produced at the hearing, and if the witness or party furnishes information bearing on the informant's reliability and, as far as possible, the means by which the information was obtained. When hearsay evidence is admitted, the court, in determining the existence of sufficient cause, shall consider:
"(a) The extent to which the hearsay quality of the evidence affects the weight it should be given, and
"(b) The likelihood of evidence other than hearsay being available at trial to provide the information furnished by hearsay at the preliminary examination."

its principal witness Applegate. The defendants contend the use of this affidavit, in lieu of the personal appearance of Applegate at the examination, abridged their constitutional right to be confronted by the witnesses against them in a criminal prosecution.[8] This issue, presents important questions of first impression to this Court concerning the application of the procedural safeguards embodied in Article I, Section 12, of the Utah Constitution to the preliminary examination.

Article I, Section 12, outlines the protections guaranteed an individual in the course of a criminal prosecution. It provides:

"In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to be confronted by the witnesses against him, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, and the right to appeal in all cases. In no instance shall any accused person, before final judgment, be compelled to advance money or fees to secure the rights herein guaranteed. The accused shall not be compelled to give evidence against himself; a wife shall not be compelled to testify against her husband, nor a husband against his wife, nor shall any person be twice put in jeopardy for the same offense."

The preliminary examination of a person accused of a crime in Utah is part of the criminal prosecution.[9] Therefore, a strict reading of the language of Section 12 would provide the accused the entire panoply of guaranteed rights at the preliminary examination. However, the allocation of the various protections afforded by Section 12 is not dependent solely upon a strict interpretation of that section.

▪ Rather, the application of the various protections embodied in Section 12 to the several stages of a criminal prosecution is defined by the relationship between the specific proceedings and the protection offered by the procedural safeguard. Only when the specific safeguard is necessary to effectuate the protection of a substantive right held by the accused will its application to the specific criminal proceeding be mandated.

Therefore, before we will grant the accused a constitutional right of confrontation at the preliminary examination, we must examine the nature and purpose of that proceeding and determine if confrontation is necessary to insure the protection of any substantive rights of the accused.

▪ Preliminary examinations in Utah are adversarial proceedings in which the

---

**8.** The defendants contend the curtailment of their constitutional and statutory right to cross-examine a material witness constitutes a denial of their right to a preliminary examination. See Article I, Section 13, Utah Constitution. Pursuant to 77–15–10 the defendants have a statutory right to have witnesses at the preliminary hearing cross-examined in their behalf. However, the necessity of the prosecution presenting a specific witness at the hearing in lieu of the introduction of an affidavit of his testimony lies outside the scope of this statutory provision, and depends, rather, on the constitutional protections afforded all criminal defendants. While we agree the procedure employed abridged these protections it did not deprive the defendants of a preliminary hearing in this particular case.

**9.** The inclusion of provisions concerning preliminary examinations in Utah's territorial laws evidences the importance of hearings in the state's criminal procedure. See Compiled Laws of Utah (territory), Vol. II, Chapter VII, Section 4872–4896 (1888). These provisions were incorporated into the State's early laws and some sections have remained unaltered to the present time. See Revised Statutes, Utah, Chapter 16, Section 4666 (1898); Compiled Laws, id., Section 4878, s. 99; compare 77–15–10. To characterize the preliminary examination as outside the scope of the "criminal prosecution" belies this heritage and the recognized importance of this proceeding. Cf., *State v. Freeman*, 93 Utah 125, 71 P.2d 196 (1937); Thus, in Utah, as in Alabama, the preliminary hearing represents a critical stage in the criminal process and a part of the criminal prosecution. See *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969).

prosecution must present evidence sufficient to establish; (a) that a public offense has been committed, and (b) sufficient cause to believe the defendant guilty thereof.[10]

■ The probable cause showing necessary in the preliminary examination differs from that required for an arrest warrant. In the latter, the facts presented must be sufficient to establish that an offense has been committed and a reasonable belief the defendant committed it. The facts presented, however, do not have to establish a prima facie case against the defendant.[11]

■ Conversely the probable cause showing at the preliminary examination must establish a prima facie case against the defendant from which the trier of fact could conclude the defendant was guilty of the offense as charged.[12]

■ The prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact.[13] Also, the

determination of sufficient cause[14] to bind the accused over for trial must be based on facts which are proved at the examination and may not depend on the information, complaint or depositions taken before the issuance of the arrest warrant.[15]

While the burden falls upon the prosecution to establish sufficient cause to believe the accused guilty of the crime charged, the adversarial qualities of the examination allow the defendant an opportunity to attack the prosecution's evidence and to present any affirmative defenses. Although the hearing is not a trial per se, it is not an ex parte proceeding nor one-sided determination of probable cause,[16] and the accused is granted a statutory right to cross-examine the witnesses against him,[17] and the right to subpoena and present witnesses in his defense.[18] Thus, the preliminary examination is an adversarial proceeding in which certain procedural safeguards are recognized as necessary to guarantee the accused's substantive right to a fair hearing.[19]

■ The fundamental purpose served by the preliminary examination is the ferreting out of groundless and improvident pros-

10. See *United States v. Eldredge*, 5 Utah 161, 13 P. 673, appeal dismissed, 145 U.S. 636, 12 S.Ct. 980, 36 L.Ed. 857 (1887), 12 (1887); cf., 77–15–17.

11. See *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The finding of probable cause in the context of an arrest warrant usually rests exclusively on hearsay evidence.

12. *Eldredge*, supra note 10, 13 P. at 676; see also *Myers v. Commonwealth*, 363 Mass. 843, 298 N.E.2d 819 (1973). In *Myers* the Supreme Judicial Court of Massachusetts adopted a "directed verdict" rule in defining the minimum quantum of evidence necessary to fulfill the probable cause requirement at the preliminary examination. The court explained, " . . . the magistrate should dismiss the complaint when, on the evidence presented, a trial court would be bound to acquit as a matter of law." 298 N.E.2d at 824.

13. Thus, the minimum quantum of evidence is more than required to establish probable cause for arrest but less than would prove the defendant guilty beyond a reasonable doubt.

14. See 77–15–17.

15. *Eldredge*, supra note 10, 13 P. at 676.

16. See *Jennings v. Superior Court of Contra Costa County*, 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304 (1967).

17. See supra note 8.

18. 77–15–8; 77–15–11; See also *State v. McGee*, 24 Utah 2d 396, 473 P.2d 388 (1970).

19. See *Myers v. Commonwealth*, supra note 12, 298 N.E.2d at 826. There the court explained: "In some cases, the evidence introduced in behalf of the defendant will do no more than raise a conflict which can best be resolved by a jury at the actual trial where the Commonwealth must prove the defendant's guilt beyond a reasonable doubt. But, in other cases, the evidence elicited by defense counsel on cross-examination or from the testimony of defense witnesses or from other evidence may lead the examining magistrate to disbelieve the prosecution's witnesses and discharge the defendant for lack of probable cause." [Footnote omitted]

ecutions.[20] The effectuation of this primary purpose relieves the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him are unwarranted or the evidence insufficient. Therefore, the grave injustice suffered by the defendant in an unwarranted prosecution may be eliminated by the efficient administration of the preliminary examination. This, also, demands the application of certain basic procedural safeguards to that proceeding.

Several ancillary purposes supplement the primary purpose of the hearing. The examination provides a means of effectively advising the defendant of the nature of the accusations against him.[21] The hearing also provides a discovery device in which the defendant is not only informed of the nature of the State's case against him, but is provided a means by which he can discover and preserve favorable evidence.[22]

The discovery available at the preliminary hearing represents an important step in the preparation of the defendant's defense for the subsequent trial.[23] The opportunity to prepare an effective defense is recognized as essential to the preservation of the defendant's substantive right to a fair trial.[24] Thus, here again, effectuation of the ancillary purposes of the preliminary hearing mandates the application of certain procedural safeguards to the hearing itself.

Our review of the nature and purpose of the preliminary examination illustrates the critical character of the proceeding in relation to various substantive rights of the defendant which are subject to infringement by the exclusion of certain procedural

**20.** See *Coleman v. Alabama*, supra note 9; *People ex rel. Leidner v. District Court*, Colo., 597 P.2d 1040 (1979). Reference to the historical foundation of the modern preliminary examination illustrates this primary purpose of ferreting out unwarranted and improvident prosecutions. In 1554 the English Parliament enacted a statute granting certain persons accused of crimes the right of an examination before a Justice of the Peace. (1 and 2—Phillip and Mary, Chapters XIII, 1554). However, the right was limited to persons accused of crimes subject to bail or mainprise. The following year in what Blackstone (Volume IV, page 296), referred to as the basis of the modern preliminary hearing, the English Parliament extended the previous right to a pretrial examination to individuals accused of non-bailable crimes. (2 and 3 Phillip and Mary, Chapter X, 1555). In extending the protection embodied in the examination the parliament recognized: "And for as much as the said act (of 1554) doth not extend to such prisoners as shall be brought before any justice of peace for manslaughter or felony, and by such justice shall be committed to ward for the suspicion of such manslaughter or felony, and not bailed, in which case the examination of such prisoners, and of such as shall bring him, is as necessary, or rather more than where such prisoner shall be let to bail or mainprise . . ." [as quoted in *Commonwealth v. O'Brien*, 181 Pa.Super. 382, 124 A.2d 666, 670 (1956).] The protection afforded the accused by the examination is the right not to be imprisoned and held to answer at trial under a malicious or unwarranted prosecution. This is reflected in the procedure of the early examinations where as explained by Blackstone: "The justices before whom such prisoner is brought is bound immediately to examine the

circumstances of the crime alleged * * * if upon this inquiry it manifestly appears that either no such crime was committed or that the suspicions entertained of the prisoner was wholly groundless in such case only is it lawful to totally discharge him." (*O'Brien*, id., 124 A.2d at 671).

**21.** See *State v. Nelson*, 52 Utah 617, 176 P. 860 (1918).

**22.** See *Lataille v. District Court of Eastern Hampden*, 366 Mass. 525, 320 N.E.2d 877 (1974).

**23.** The importance of the ancillary discovery attendant to the preliminary hearing is moderated by the existence of other discovery devices available to the defendant. Thus, in Colorado where an extensive procedural panoply of discovery devices is granted the criminal defendant the discovery incident to the preliminary hearing is relatively unimportant. See *Rex v. Sullivan*, 194 Colo. 568, 575 P.2d 408 (1978).

**24.** See *State v. Jensen*, 34 Utah 166, 169, 96 P. 1085, (1908); In Jensen this Court explained: "The purpose of this provision of the Constitution [Article I, Section 13] is to secure to the accused before he is brought to trial under an information, the right to be advised of the nature of the accusation against him and to be confronted with and given an opportunity to cross-examine witnesses testifying on behalf of the state. He is thus enabled, if he so desires, to fully inform himself of the facts upon which the state relies to sustain the charge made against him, and be prepared to meet them at the trial." 96 P. at 1086.

safeguards at this step in the criminal prosecution.[25]

Recognizing the "critical" character of this proceeding the Supreme Court has extended the right of counsel (as embodied in the Sixth Amendment of the Federal Constitution) to an indigent at the preliminary hearing.[26] Similarly the California Supreme Court has granted the accused the right to compel the attendance of witnesses for his defense at the preliminary examination.[27] The protections afforded by the right of confrontation at the preliminary examination are equally important and so inter-related to the right to effective counsel and the presentation of a defense [28] that they must be guaranteed the accused at the preliminary hearing.

Classically, the primary object of the constitutional right of confrontation is to prevent depositions and ex parte affidavits from being used against the accused at trial in lieu of a personal examination and cross-examination of the witness against him. When confrontation is available the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face-to-face with the jury in order that they may look at him and judge by his demeanor and the manner in which he gives his testimony whether he is worthy of belief.[29] Encompassed in this right of confrontation is the procedural right of cross-examination [30] and the recognition of certain procedural rights regarding the exclusion of extra judicial statements, similar to those found protected by evidentiary rules excluding hearsay evidence.[31]

The adversarial nature of the preliminary hearing is conducive to the imposition of these procedural safeguards. The application of the right of cross-examination, and the exclusion of certain out of court statements at this stage of the criminal prosecution insures essential protection of the defendant's substantive rights.

**25.** In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States Supreme Court recognized the protections embodied in the Sixth Amendment (which are echoed in Article I, Section 12, of the Utah Constitution) apply to "critical" stages of the proceeding—" . . . where the results might well settle the accused's fate and reduce the trial itself to a mere formality." (at 225, 87 S.Ct. at 1931). In *Coleman v. Alabama*, supra note 9, 399 U.S. at 9, 90 S.Ct. at 2003, the Court clarified this terminology by explaining, "The determination whether the (preliminary) hearing is a 'critical stage' . . . depends, as noted, upon an analysis 'whether potential substantial prejudice to defendant's rights inhere in the . . . confrontation . . . '"

**26.** See *Coleman v. Alabama*, supra note 9, at 9, 90 S.Ct. 1999 at 2003. ("Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution.")

**27.** See *Jennings*, supra note 16.

**28.** The crucial interrelationship between confrontation and the assistance of counsel and the preparation of a defense was implicitly recognized in *Coleman v. Alabama*, supra note 9, 399 U.S. at 9, 90 S.Ct. at 2003, where the Court delineated the nature of the protection afforded by the guiding hand of counsel, by explaining, "First, the lawyer's skilled examination and cross-examination of witnesses may expose fa-

tal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial."

**29.** See *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1894). See also, *State v. Mannion*, 19 Utah 505, 57 P. 542 (1899).

**30.** See *State v. King*, 24 Utah 482, 68 P. 418 (1902).

**31.** However, the Supreme Court of the United States pointed out in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) that the confrontation clause is not a constitutionalization of evidentiary rules concerning hearsay and while protecting similar values the decisions of the Supreme Court have never established a total congruence between the two. Thus, introduction of certain evidence could fall within an accepted exception to the hearsay rules and, yet, contravene the accused's constitutional rights of confrontation.

Specifically, the cross-examination of witnesses presenting testimony against the accused at the hearing provides a means of attacking their credibility and thus the substance of their testimony. In a proceeding such as the preliminary examination, where the credibility of the witnesses is an important element in the determination of probable cause,[32] the recognition of a procedural right of cross-examination is essential to the preservation of a fair hearing. The introduction of certain material testimony, albeit under the hearsay exemption granted by 77–15–19, would seriously curtail the defendants ability to present an affirmative defense at the preliminary hearing by denying him the protections provided by the confrontation of witnesses against him.

■ If the preliminary examination is to retain any meaningful significance in the criminal prosecution and provide an effective means of weeding out improvident prosecutions, the protections attendant the defendant's right to present an affirmative defense cannot be circumvented by allowing the prosecution to base its showing of probable cause on hearsay evidence.[33] Therefore, the trial court's interpretation of 77–15–19, which allowed the prosecution to present the testimony of a material witness via an *extra judicium* affidavit, cannot be accepted.

Additionally, the ancillary benefits inherent in this preliminary proceeding, e. g., the various aspects of discovery incident to the pretrial examination of prosecution witnesses, would be seriously curtailed by denying the defendant a right of confrontation at the hearing. This curtailment would infringe upon the defendant's right to a fair trial, by denying him the opportunity to prepare an effective defense.

For example, the cross-examination of witnesses at this preliminary stage in a criminal prosecution provides the defendant an opportunity to attack their testimony before it becomes immutable by repetition and the influence, however legitimate, of the prosecution. Also, favorable testimony will often be elicited from the cross-examination of the witnesses at the preliminary examination and contradictory statements made at the hearing may subsequently become important as tools for attacking the credibility of the witnesses at the actual trial.[34]

However, recognition of the right of confrontation at the preliminary examination does not change the character of that proceeding. It must still retain its preliminary nature and is not to be considered a full trial on the merits. The prosecution is not required to introduce its entire case at the hearing but, rather, need only introduce that quantum of evidence necessary to surmount their burden of proving probable cause. The recognition of the right of confrontation at the preliminary examination merely demands the prosecution's use of hearsay evidence at the hearing may not circumvent the defendant's substantive rights to a fair hearing and a fair trial, by denying the defendant an opportunity to cross-examine the witnesses who offer testimony at the hearing.

■ We must turn now to determine the effect of this holding in the present case. Although the judge's interpretation of the statute and his acceptance of the hearsay evidence constitute error, that error was not prejudicial to the defendants. Rather, in this case, the error was rendered harmless by the testimony of the other witnesses

---

32. See *Myers*, supra note 12, 298 N.E.2d at 826.

33. Cf., *Coleman v. Burnett*, 477 F.2d 1187 (D.C. Cir.1973) ("The right to counsel which Coleman declared would amount to no more than a pious overture unless it is a right to counsel able to function efficaciously in his client's behalf." At 1205); Analogous to this reasoning is the conclusion that the extensive use of hearsay evidence at grand jury proceedings tends to destroy the protection from unwarranted pros-

ecutions that grand juries are supposed to afford the innocent. See *United States v. Umans*, 368 F.2d 725 (2nd Cir. 1966), *cert. granted*, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, *cert.* dismissed, 389 U.S. 80, 19 L.Ed.2d 255, 88 S.Ct. 253, reh. denied, 389 U.S. 1025, 88 S.Ct. 583, 19 L.Ed.2d 675 (1967). See also *United States v. Hubbard*, 603 F.2d 137 (10th Cir. 1979).

34. *California v. Green*, supra note 31.

at the hearing. Their testimony, when considered in conjunction with the copies of the false statements signed by Applegate which were presented at the hearing, was sufficient to surmount the prosecution's burden and establish sufficient cause to bind the matter over to trial. The introduction of the sworn affidavit of Applegate was in actuality favorable to the defendants because it provided additional discovery and possible impeachment evidence. Thus, the character of the error and the defendants' failure to prove any significant prejudice denies a reversal of the present conviction based upon it.[35]

 The conviction of Brackenbury, however, must be overturned, because of the immunity granted to him prior to trial. Under the powers vested in the prosecuting attorney by 77–45–21, he solicited pre-trial testimony from Brackenbury by granting; " . . . immunity only to the incident relating to the bar and to James Garner and to his [Brackenbury] activities as Justice of the Peace in relation to arrests and the people brought before him."

Applegate's testimony at trial indicated he was under arrest at the time of the incident, and the Justice Court of Soldiers Summit was declared in session by Brackenbury before Applegate was intimidated into signing the statements in question. Therefore, the present prosecution falls within the scope of immunity granted by the prosecuting attorney.[36]

While we believe justice requires the vacation of Brackenbury's conviction, we in no way condone his actions. His conduct is severely censured. The Justice of the Peace Association should investigate such activity.

Because of our application of Article I, Section 12 of the Utah Constitution, we need not consider the appellants' federal constitutional claims. After thorough consideration of the other points presented on appeal, we conclude they are without merit.

WILKINS and STEWART, JJ., concur.

CROCKETT, Chief Justice (concurring in result, with comments):

I concur in the result of the main opinion, but feel impelled to make some observations.

According to my understanding of the opinion, its import is that if Section 77–15–19, U.C.A. is applied in accordance with its terms, by admitting evidence by hearsay or by affidavit, it is in violation of constitutional safeguards. With this I cannot agree. The statute impresses me as being carefully and advisedly drawn, with adequate protections for the rights of an accused, and of the public; and that it is therefore fair and constitutional if properly applied.

It is also pertinent to observe that the courts should not reach out and hold a statute unconstitutional in the abstract, but should do so only if it is in violation of the constitutional rights of the person complaining.[1] The main opinion itself properly points out that what was done in applying Section 77–15–19 in this case resulted in no prejudice to the defendants. I am therefore unable to see justification or purpose in attacking either that statute or its application herein.[2]

I agree that the grant of immunity by the county attorney to defendant Brackenbury is fairly understood to include what

**35.** See *State v. Hamilton*, 18 Utah 2d 234, 419 P.2d 770 (1966); *State v. Libbey*, 224 Or. 431, 356 P.2d 161 (1960); See also *People v. Neal*, 53 Cal.App.2d 379, 127 P.2d 996 (1942).

**36.** See *State v. Ward*, Utah, 571 P.2d 1343, 1347 (1977) [Wilkins dissent]. The state may not claim any benefit from the ambiguous nature of the prosecuting attorney's grant of immunity, and any questions of interpretation must be resolved in favor of the defendant.

**1.** *Baird v. State*, Utah, 574 P.2d 713 (1978).

**2.** That when the court determines that a statute does not apply in a case, it should not go further and consider its validity, see 3 Am.Jur. 383; *Heathman v. Giles*, 13 Utah 2d 368, 374 P.2d 839 (1962); *State v. Granato*, Utah, 610 P.2d 1290 (1980).

was done with respect to the prospective witness Applegate; and that the charge against him should be dismissed.

HALL, Justice (concurring in result):

I concur in the disposition of the appeal, but reserve judgment on the constitutional issue discussed in the main opinion since it is not essential to the decision in this case.[1]

1. See *Hoyle v. Monson*, Utah, 606 P.2d 240 (1980), see also, *Heathman v. Giles*, 13 Utah 2d 368, 374 P.2d 839 (1966).