*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH and L.L.,
*Appellants,*

*v.*

IVAN MICHAEL LOPEZ,
*Appellee.*

STATE OF UTAH,
*Appellee,*

*v.*

DARIN CHASE NIELSEN,
*Appellant.*

Nos. 20180940, 20180945, 20180952, and 20190272
Heard April 8, 2020
Filed August 18, 2020

On Consolidated Appeal of Interlocutory Orders

Third District, Salt Lake
The Honorable James T. Blanch
No. 181907088

Fourth District, Provo
The Honorable Robert C. Lunnen
No. 181100038

Attorneys:

Sean D. Reyes, Att'y Gen., Tera J. Peterson, Asst. Sol. Gen.,
Clint T. Heiner, Donna Kelly, Lance E. Bastian, Salt Lake City, for the
State of Utah

Paul Cassell, Heidi Nestel, C. Bethany Warr, Salt Lake City,
for appellant L.L.

Alexandra S. McCallum, Salt Lake City, for appellee
Ivan Michael Lopez

Dallas Young, Douglas J. Thompson, Provo, for appellant
Darin Chase Nielsen

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
AND JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Ivan Michael Lopez and Darin Chase Nielsen each stand accused of engaging in illicit activities with children. Lopez is charged with furnishing alcohol to, raping, and otherwise sexually abusing a twelve-year-old girl (L.L.) in the back of his truck. Nielsen is charged with sexually abusing his five-year-old daughter (A.N.) while alone with her in a bedroom.

¶2 L.L. and A.N. each participated in interviews about their alleged abuse at the Children's Justice Center (CJC). These interviews were later introduced (along with other evidence) as "reliable hearsay" at Lopez's and Nielsen's preliminary hearings in accordance with rule 1102 of the Utah Rules of Evidence and rule 15.5 of the Utah Rules of Criminal Procedure. Both Lopez and Nielsen sought to compel their alleged victims to testify by way of subpoena, each asserting a right to do so under rule 7B of the Utah Rules of Criminal Procedure and the Compulsory Process Clause of article I, section 12 of the Utah Constitution.

¶3 In the Lopez case, the State and L.L. moved to quash the subpoena, but the magistrate denied the motions, opting instead to modify the manner in which L.L. would be required to testify. In the Nielsen case, the magistrate granted the State's motion to quash the subpoena. We agreed to hear the cases on interlocutory appeal, in recognition of the need for guidance from this court on the clash

between the rights of defendants and victims in a preliminary hearing. We resolve both cases in this consolidated opinion.

¶4 We hold that any power a defendant has to subpoena witnesses at a preliminary hearing—whether under the rules of criminal procedure or the constitution—must be understood in light of the prerogative of the court to "quash or modify [a] subpoena if compliance would be unreasonable." UTAH R. CRIM. P. 14(a)(2). And we conclude that the unreasonableness inquiry must account for the circumscribed function of the preliminary hearing (to determine whether there is probable cause to justify bindover) as well as the limited burden of proof on the State and the established rights of victims at such a hearing. Thus, we hold that once the State has used a victim's reliable hearsay to make a *prima facie* showing of probable cause, a subpoena compelling the victim[1] to give additional, live testimony will survive a motion to quash only if the defendant demonstrates that the subpoena is necessary to present specific evidence that is reasonably likely to defeat the showing of probable cause. Since neither Lopez nor Nielsen attempted to explain how his alleged victim's additional, live testimony would inform the probable cause determination, we reverse the Lopez court's refusal to quash L.L.'s subpoena and affirm the Nielsen court's decision to quash A.N.'s subpoena.

¶5 Part I lays out the facts and procedural background of the Lopez and Nielsen cases. Part II answers a threshold question raised in the Lopez case—whether an alleged victim has a right to seek an interlocutory appeal or lodge a direct appeal from a magistrate's denial of a motion to quash her subpoena. Part III sets forth the standard that governs such motions, as informed by the probable cause standard and the law protecting the rights of crime victims. Part IV then applies this standard to the facts of the Lopez and Nielsen cases. Part V concludes.

---

[1] Throughout this opinion, we sometimes use the term "victim" for simplicity. We acknowledge that at the preliminary hearing stage, a victim of a crime is an *alleged* victim of a crime. *See* UTAH CODE § 77-38-2(9)(a) ("'Victim of a crime' means any natural person against whom the charged crime or conduct is *alleged* to have been perpetrated or attempted by the defendant or . . . against whom a related crime or act is *alleged* to have been perpetrated or attempted . . . ." (emphases added)).

I. BACKGROUND[2]

A. Lopez

¶6    Lopez began communicating via phone call and text message with L.L. and her friend, C.D., by posing as a fifteen-year-old boy named "Giovanni." One night, L.L. told Lopez that she wanted to visit C.D., who was undergoing surgery at the hospital the next morning. Lopez told L.L. that he had a car and offered to drive her to C.D.'s house. L.L. accepted the offer and met Lopez for the first time in person at a local gas station. Instead of taking L.L. to C.D.'s house, however, Lopez drove to a residential neighborhood in Kearns, parked on a corner, and locked the doors. L.L. moved to the backseat to get away from him, but Lopez followed. He then offered L.L. marijuana and beer, which she later testified that she refused. Lopez drank a beer himself and threw the can out the window. He then undressed L.L., undressed himself, and got on top of her, vaginally penetrating her with his penis and placing his mouth on her breasts.[3]

¶7    A homeowner called the police after noticing two people sitting in the back of a parked truck and seeing something thrown from the vehicle. When the responding officer arrived, she found a beer can near the truck, the windows steamed up, and Lopez (then twenty-seven years old) and L.L. (then twelve years old) in the backseat. Both were shuffling their clothing, and Lopez had his underwear around one of his ankles under his pants.[4] The officer testified that both occupants had their shirts inside out and smelled of beer. L.L. told the officer that they had been drinking.

¶8    After talking with the officer, L.L. received a sexual assault exam, in which she related some of the details of this encounter to a nurse. The nurse took photographs of red marks she noticed on L.L.'s breasts. Later, an investigating detective interviewed L.L. at the CJC, where L.L. gave the full story. The investigating detective also

---

[2] When relating the evidence presented at a preliminary hearing, we state the facts "in the light most favorable to the prosecution, with all reasonable inferences in its favor." *State v. Jones*, 2016 UT 4, ¶ 2 n.1, 365 P.3d 1212 (citation and internal quotation marks omitted).

[3] L.L. also told the CJC interviewer that her shirt and bra stayed on throughout the encounter.

[4] L.L. testified that Lopez told her to hurry and get her clothes back on when he noticed the officer approach.

interviewed C.D., who said that L.L. had told her that she (L.L.) and Lopez had had sex.

¶9 The State charged Lopez with (1) rape of a child,[5] (2) aggravated sexual abuse of a child,[6] and (3) furnishing alcohol to a minor.[7] Before his preliminary hearing, Lopez served L.L. with a subpoena compelling her to testify. L.L. moved to quash the subpoena on the ground that forcing her to testify at the preliminary hearing would be "unreasonable" in light of her statutory and constitutional rights as a victim. Lopez responded that "[c]rime victims do not have a right under Utah law to refuse to testify at court hearings when they have been lawfully served with a subpoena." The court took L.L.'s motion under advisement and proceeded with the preliminary hearing.

¶10 In the State's case-in-chief, both the responding officer and investigating detective testified. Lopez cross-examined both. The State then played a video recording of L.L.'s CJC interview and introduced the results of L.L.'s sexual assault exam.

¶11 Once the State rested, the court heard arguments on L.L.'s motion to quash. Lopez argued that he was not required to explain what he expected L.L.'s live testimony to provide because he was "entitled" to "find out some more of the details" even if L.L.'s testimony ultimately supported rather than undermined probable cause.

¶12 The court agreed with Lopez and denied the motion to quash, holding that the subpoena was "not unreasonable under the facts and circumstances of this case." In particular, it noted L.L.'s "mature demeanor" and the fact that the courtroom would be relatively empty. The court admitted that it did not "see a likely basis that questioning the child victim in this case would defeat probable cause . . . where the State has met its burden for bindover during its prima facie case," but held that the defendant "need not show a particular likelihood that calling the child victim will defeat probable cause prior to exercising his right to call the child victim." The court justified its decision by reasoning that, under the low probable cause standard, "if defendants were required to make such a showing prior to subpoenaing and questioning witnesses, the Court would be required to quash defense

---

[5] UTAH CODE § 76-5-402.1.

[6] *Id.* § 76-5-404.1(4).

[7] *Id.* § 32B-4-403.

witnesses' subpoenas in every case and defendants' right to call witnesses under rule 7B . . . would be illusory."[8] Still, the court modified the subpoena so that Lopez would remain in the holding cell while L.L. testified, and it indicated that it might make further accommodations later on.

¶13 The parties agreed to continue the proceedings and both L.L. and the State petitioned for interlocutory review of the denial of the motion to quash. L.L. also filed a timely notice of direct appeal. We provisionally granted L.L.'s interlocutory appeal, granted the State's, and consolidated them with L.L.'s direct appeal (deferring a determination on our jurisdiction over the direct appeal).

## B. Nielsen

¶14 The State's probable cause statement alleges that Nielsen "engaged in sex acts with his daughter, A.N." Specifically, the State claims that in a forensic interview at the CJC, A.N. described a "naughty game" that she and Nielsen would play on a bed. In this game, Nielsen would allegedly touch A.N.'s "bottom" with a "part" that was "round," the "color of skin," and close to his belly button, as well as touch A.N. between her legs with his hands. The State is charging Nielsen with two counts of aggravated sexual abuse of a child with a prior grievous sex offense.[9]

¶15 Prior to the preliminary hearing, Nielsen moved to subpoena various witnesses (including A.N.), while the State moved to admit A.N.'s CJC interview and quash her subpoena. In opposing the latter motion, Nielsen argued that while he had an express right to call witnesses under rule 7B of the Utah Rules of Criminal Procedure and article I, section 12 of the Utah Constitution, nothing in the rules or constitution granted victims a right to "avoid legal process" or "not be required to testify." He also argued that subpoenaing A.N. would not destroy the State's ability to use reliable hearsay at preliminary hearings in its case-in-chief.

---

[8] Elsewhere, however, the court also expressed the view that quashing a subpoena might be appropriate "where it's purely and entirely speculative about whether or not a witness's testimony could potentially defeat bindover, and we [a]re dealing with a very, very young child where it [i]s apparent to the Court that it would be a traumatic experience for the alleged victim in the case to testify."

[9] UTAH CODE § 76-5-404.1(4). At the time, Nielsen was on parole for a prior conviction of aggravated sexual abuse of a child.

¶16 The court began the preliminary hearing by granting the State's motion to quash the A.N. subpoena. In so doing, the court cited Utah's policy of allowing reliable hearsay in preliminary hearings as laid out in rules 7B and 15.5 of the Utah Rules of Criminal Procedure, rule 1102 of the Utah Rules of Evidence, article I, section 12 of the Utah Constitution, and this court's opinion in *State v. Timmerman*, 2009 UT 58, 218 P.3d 590. Nielsen objected to this ruling, asserting that "[n]o witness except [A.N.] can eviscerate and make incredible the State's alleged claims to probable cause," that "[w]ithout context, the State's inference of the 'naughty game'" would "stretch the legal fabric past it[]s sure point," and that he had a right to "test the State's evidence." But Nielsen never explained what clarification he expected A.N. to offer, and the court reaffirmed its ruling.

¶17 The State then called the forensic interviewer, A.N.'s mother, and the investigating detective to testify. The interviewer explained how he had avoided asking leading questions or suggesting A.N.'s answers. A.N.'s mother testified that Nielsen was alone with A.N. sometimes. The investigating detective testified that A.N.'s step-grandmother had first reported the abuse to the police. Nielsen cross-examined all these witnesses, but never about the content of A.N.'s CJC interview or the manner in which it was conducted.[10] Finally, the State introduced Nielsen's 2005 conviction for aggravated sexual abuse of a child.

¶18 At the close of the preliminary hearing, Nielsen offered no evidence. Instead, he asked that the magistrate hear argument on the "strengths and weaknesses" of the CJC video once he (Nielsen) had seen the video and conferred with counsel "as to the presence or lack of presence of probable cause." The State and the court agreed. But before the next scheduled hearing could occur, Nielsen obtained new counsel, who asked the court to clarify its ruling on the motion to quash so that Nielsen could have a clean record on which to seek interlocutory appeal of the decision pre-bindover. In a telephone conference, defense counsel admitted that "one of the difficult issues" in the case was that they did not know "precisely what [A.N.] would say."

¶19 The magistrate then issued a written ruling reaffirming the original decision, holding that "[d]efendant's assertion that he has an unrestrained right to call A.N. as a witness at his preliminary hearing

---

[10] Nielsen asked the forensic interviewer about his notes, for example, but not his questioning of A.N.

is entirely inconsistent with the overall intent expressed in the rules and statutes governing preliminary hearings," and that the purpose of the Victims' Rights Amendment was to "excuse victims from having to appear at the preliminary examination." In particular, the court noted victims' constitutional rights to "be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process." UTAH CONST. art. I, § 28(1)(a). The court also concluded that if Nielsen's subpoena were "characterized as an effort to exercise his right to cross-examination," then "*Timmerman* [2009 UT 58] and *Crawford* [*v. Washington*, 541 U.S. 36 (2004)] have explicitly rejected that argument."

¶20 Nielsen petitioned for interlocutory review of the order, which we granted. As the parties had agreed, the magistrate stayed the proceedings and delayed any decision on bindover.

## II. L.L.'S RIGHT TO APPEAL

¶21 A threshold question in the Lopez case concerns the proper avenue for challenging a decision on a motion to quash a defendant's preliminary-hearing subpoena. Lopez's alleged victim, L.L., filed a direct appeal of right, apparently on the theory that the decision in the Lopez case was effectively "final" under our law. As an apparent backup, L.L. also petitioned for interlocutory appeal—a petition which we "provisionally" granted, subject to briefing on whether L.L. has standing to seek appellate review.

¶22 We undoubtedly have jurisdiction to hear the case, having granted the *State's* petition for interlocutory appeal. *See* UTAH CODE § 78A-3-102(3)(h) ("The Supreme Court has appellate jurisdiction . . . over . . . interlocutory appeals from any court of record involving a charge of a first degree or capital felony."). And L.L. clearly has both the standing and right to pursue an interlocutory appeal from the denial of her motion to quash, as she would be forced to testify otherwise and has a statutory right to seek an appeal from an "[a]dverse ruling[]" on her motion "under the rules governing appellate actions." UTAH CODE § 77-38-11(2)(b).[11] Yet L.L. urges us to

---

[11] *See also Haik v. Jones*, 2018 UT 39, ¶ 18, 427 P.3d 1155 (holding that the traditional standing test "requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute." (citation and internal quotation marks omitted)); *State v. Brown*, 2014 UT 48, ¶ 16, 342 P.3d 239 (holding that "[t]he traditional parties to a criminal proceeding are the prosecution and the defense," but that "does not eliminate the possibility that a
(continued . . .)

decide whether she also has a right to file a direct appeal, emphasizing the upsides of our providing clarity on the matter.

¶23 We agree with the need to address this issue but disagree with the notion that L.L. has a right to a direct appeal. Clarity in our articulation of the law of appellate jurisdiction is important. *See Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 16, 293 P.3d 241 (explaining that "certainty is critical" and "bright-line rules" are helpful on matters of appellate jurisdiction). And for that reason we exercise our discretion to resolve the question presented despite the fact that our decision is not required.

¶24 We conclude, however, that the proper mechanism for appeal in this circumstance is a petition for interlocutory appeal. Our rules, as interpreted in our case law, provide only for a discretionary petition for interlocutory appeal, not a direct appeal of right.

¶25 Federal case law endorses the notion of a "collateral order" doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949). This doctrine treats as final (and appealable) a ruling that is otherwise interlocutory but conclusively determines a "claim[] of right" that is "separable from" and "collateral to" the underlying action, and that would be "effectively" unreviewable on appeal from a final judgment. *Id.* at 546. The terms and conditions of this doctrine could potentially be established here, where the refusal to quash a subpoena compelling victim testimony is conclusive and separate from the criminal charges against the accused and could be deemed "effectively" unreviewable on appeal from a final judgment. But we have thus far declined to adopt the collateral order doctrine as a matter of Utah law. *See Mecham v. Frazier*, 2008 UT 60, ¶ 12, 193 P.3d 630 ("[I]n Utah, there is no collateral order doctrine."); *Tyler v. Dep't of Human Servs.*, 874 P.2d 119(Utah 1994) (per curiam) (declining to adopt the federal collateral order doctrine on the ground that Utah law provides sufficient avenues for obtaining review of nonfinal orders). And we have identified three specific avenues for appeal from a nonfinal judgment in our courts: petition for interlocutory appeal under appellate rule 5, certification under civil rule 54(b), and petition for extraordinary relief under civil rule 65B(e). *Tyler*, 874 P.2d at 120. We have determined that these avenues provide Utah courts

_____

victim may qualify as a limited-purpose party—with standing to assert a claim"); *State v. Casey*, 2002 UT 29, ¶ 22, 44 P.3d 756 (recognizing that "crime victims possess the right to appeal rulings on motions related to their rights as a victim").

with "ample power" to consider granting "immediate review" where "appropriate." *Id.* ("Our rules allowing discretionary review provide parties an opportunity to convince an appellate court that the issue raised is so important that review prior to full adjudication of the case is justified or that the order will escape review altogether if an appeal is not allowed.").

¶26   These principles control our decision here. There is no final judgment in the case before us on review—indeed, the case is at a very preliminary stage. For that reason, the appellate avenues available to L.L. are those set forth under our case law.[12] L.L accordingly has no direct appeal available of right and is limited to a discretionary appeal under appellate rule 5. Because she properly pursued that avenue and undoubtedly has standing, we affirm our jurisdiction to hear her appeal in addition to the State's.

## III. THE STANDARD FOR JUDGING THE QUESTIONS PRESENTED ON APPEAL

¶27   We turn next to the standard for judging a motion to quash a subpoena directed to an alleged victim in a preliminary hearing. This is a complex question of first impression that requires us to balance defendants' rights under our rules and constitution against victims' rights under the same—in particular, the Victims' Rights Amendment adopted in 1995.

¶28   In asserting a right to subpoena their alleged victims to testify at their preliminary hearings, the defendants rely first on rule 7B(a) of our rules of criminal procedure—a provision that states that a defendant in a preliminary hearing "may testify under oath, call

---

[12] Our cases have recognized a direct appeal of right from the entry of at least one form of non-final order—an order denying a motion to intervene. *See Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 17, 156 P.3d 782; *Commercial Block Realty Co. v. U.S. Fid. & Guar. Co.*, 28 P.2d 1081, 1082 (Utah 1934). But this case does not involve that kind of non-final order, and L.L. has neither cited these cases nor suggested that they are implicated by the denial of a motion to quash.

For that reason we need not and do not decide whether or how our cases on intervention may be reconciled with our general rejection of a collateral order doctrine. Instead we hold that L.L. has not established a right to an appeal of right in a case like this one. And we leave any questions about our precedent on denial of a motion to intervene for a case in which these cases are squarely presented and briefed by the parties.

witnesses, and present evidence." They then invoke their right to "compulsory process" under article I, section 12 of the Utah Constitution.[13]

¶29 The magistrate in the Lopez case endorsed the defendants' general view. In denying the motion to quash, the magistrate noted that Lopez had an "explicit right to call witnesses" under rule 7B(a) and concluded that no constitutional provision, statute, or procedural rule "explicitly provides that a child sex abuse victim cannot be called to testify at a preliminary hearing." The magistrate acknowledged that it could not "see a likely basis" for concluding "that questioning the child victim in this case would defeat probable cause . . . where the State has met its burden for bindover during its prima facie case." But it nonetheless ruled that Lopez was not required to "show a particular likelihood that calling the child victim [would] defeat probable cause prior to exercising his right to call the child victim." In light of the "low probable cause standard," the magistrate thought that "if defendants were required to make such a showing prior to subpoenaing and questioning witnesses, the Court would be required to quash defense witnesses' subpoenas in every case and defendants' right to call witnesses under rule 7B . . . would be illusory." The court

---

[13] In the proceedings below, Lopez did not even quote the Compulsory Process Clause, opting instead to make a vague reference to article I, section 12 of the Utah Constitution. This is insufficient. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196 ("A party must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case . . . ."). We address the issue only with respect to Nielsen, since he did grapple with and make an argument respecting the text of the Compulsory Process Clause.

On appeal, Lopez—and, in more vague terms, Nielsen—also seek to base their right to compel testimony of the alleged victims in the Due Process Clause. But neither Lopez nor Nielsen preserved this claim below—either in their memoranda opposing the motions to quash the subpoenas or in argument before the court. Lopez's counsel did mention "due process" once while arguing in the court below, but that was in connection with an argument over a defendant's right to a preliminary hearing. And Nielsen made only a vague insistence that his subpoena protected a "substantial right." These vague allusions to due process are not enough to preserve the due process claim pursued in the briefs on appeal. And we decline to reach this claim on preservation grounds.

thus recognized its authority to "quash or modify [a] subpoena if compliance would be unreasonable" under the terms of criminal rule 14(a)(2), but held that the subpoena at issue was "not unreasonable under the facts and circumstances of [the] case," including the "mature demeanor" of the alleged victim and the fact that the courtroom would be relatively empty during the preliminary hearing. Still, the court modified the subpoena by requiring that Lopez remain in a holding cell while L.L. testified and indicating that further accommodations might be added as required.

¶30 The court in the Nielsen case granted the motion to quash. In so doing, the magistrate concluded that Nielsen's "assertion that he has an unrestrained right to call" an alleged victim "as a witness at his preliminary hearing is entirely inconsistent with the overall intent expressed in the rules and statutes governing preliminary hearings." The court also cited Utah Rule of Evidence 1102(b)(7) and Utah Rule of Criminal Procedure 15.5, which open the door to the admission of hearsay testimony by victims under fourteen years of age in certain circumstances.[14] It further held, quoting *State v. Nguyen*, that these rules are aimed at "prevent[ing] child victims from being further traumatized by the experience of testifying of their abuse in court." 2012 UT 80, ¶ 22, 293 P.3d 236. And it noted that article I, section 28 of the Utah Constitution provides that "victims of crime have their own independent rights to justice and due process, and demands that they 'be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process.'" Finally, the court ruled that to the extent the Nielsen subpoena was an attempt "to exercise [a] right to cross[-]examination," that argument was foreclosed by *State v. Timmerman*, 2009 UT 58, ¶ 9, 218 P.3d 590, and *Crawford v. Washington*, 541 U.S. 36, 40 (2004).

¶31 We appreciate and commend the work of the magistrates for their careful attention to the difficult questions presented in the two cases before us in this consolidated opinion. Their reasoned analysis has helped to sharpen the questions presented for our review—questions that require a careful balance of seemingly competing

---

[14] UTAH R. EVID. 1102(b)(7) ("For purposes of criminal preliminary examinations only, reliable hearsay includes[] . . . a statement made by a child victim of physical abuse or a sexual offense which is recorded in accordance with Rule 15.5 of the Utah Rules of Criminal Procedure"); UTAH R. CRIM. P. 15.5 (laying out the proper procedures for recording such testimony).

provisions of law and that have never before been considered by this court.

¶32 We conclude that the key to balancing these various provisions is the insight that any general ability a defendant may have to compel his alleged victim to testify in a preliminary hearing must be understood in light of the court's authority to "quash or modify [a] subpoena if compliance would be unreasonable." UTAH R. CRIM. P. 14(a)(2). And we hold that that reasonableness inquiry must account for a range of limitations on a defendant's ability to compel an alleged victim to testify—the constitutionally limited purpose of a preliminary hearing, the State's ability to rely on reliable hearsay, the low bar that applies in a decision to bind a defendant over for trial, and other victim protections set forth in the 1995 Victims' Rights Amendment to the Utah Constitution. With these provisions in mind, we hold that once the State has used a victim's reliable hearsay to make a *prima facie* showing of probable cause, a subpoena compelling the victim to give additional, live testimony will survive a motion to quash only if the defendant demonstrates that the subpoena is necessary to the presentation of specific evidence that is reasonably likely to defeat the showing of probable cause.

¶33 We develop the basis for our holdings in the paragraphs below. We first discuss a defendant's ability to call witnesses at a preliminary hearing and identify an important limitation—the power of a court to quash a subpoena where "compliance would be unreasonable." We then consider a series of provisions in our law that inform the inquiry into the reasonableness of a subpoena compelling an alleged victim at a preliminary hearing. And we conclude by articulating the governing standard in greater detail.

### A. The Defendant's Ability to "Call Witnesses" at a Preliminary Hearing

¶34 The threshold question concerns the existence of an alleged "right" to subpoena a witness to testify at a preliminary hearing. Defendants' first-cited basis for the existence of such a "right" is criminal rule 7B. That rule governs preliminary hearings. It provides in relevant part that "[a]t the conclusion of the state's case, the defendant may testify under oath, *call witnesses*, and present evidence." UTAH R. CRIM. P. 7B(a) (emphasis added). The Lopez court cited this language, noted the absence of an "explicit[]" protection for alleged victims, and concluded that the "right" to "call witnesses" would be "illusory" if it were conditioned on a requirement of proof of a "particular likelihood" that a subpoenaed witness would defeat probable cause.

¶35 Defendants also invoke the Compulsory Process Clause of article I, section 12 of the Utah Constitution. They note that this provision states that "the accused *shall* have the right" to "compulsory process to compel the attendance of witnesses" in "criminal prosecutions." UTAH CONST. art. I, § 12 (emphasis added). And they assert that this provision applies to a preliminary hearing, presumably as the first step in a "criminal prosecution[]."[15] *Id.*

¶36 The State and Lopez's alleged victim (L.L.) challenge this latter proposition. They contend that the constitutional compulsory process right applies with limited force, if at all, in a preliminary hearing—especially after the adoption of the Victims' Rights Amendment. They likewise challenge the breadth of any rule-based right to "call witnesses" at a preliminary hearing, asserting that rule 7B(a) says only that the defendant "may" call witnesses, and contending that any such authority must be limited by other provisions of the criminal rules and by the terms and conditions of the Victims' Rights Amendment to the Utah Constitution.

¶37 The State and L.L. cite our decision in *State v. Timmerman*, 2009 UT 58, 218 P.3d 590, in support of their position. They note that in that case we held that the 1995 Victims' Rights Amendment "clearly removed *confrontation rights* from the preliminary hearing stage" of a criminal case and overruled our prior decision in *State v. Anderson*, 612 P.2d 778, 784–85 (Utah 1980), on this point. *Timmerman*, 2009 UT 58, ¶ 15 (emphasis added). And the State asks us to hold that the cited legal grounds for the purported right to compel an alleged victim to testify at a preliminary hearing are nothing more than an attempted end run around *Timmerman*.

¶38 The governing provision of the Victims' Rights Amendment expressly states that "[n]othing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination to determine probable cause . . . if appropriate discovery is allowed as defined by statute or rule."

---

[15] Defendants' amicus, the Utah Association of Criminal Defense Lawyers (UACDL), makes a similar argument by pointing to Utah Code section 77-1-6(1)(e), which provides that "[i]n criminal prosecutions the defendant is entitled . . . [t]o have compulsory process to insure the attendance of witnesses in his behalf." UACDL asks us to uphold the statutory right to "compulsory process" and to hold that it applies at the preliminary hearing stage. Our analysis on the Compulsory Process Clause applies with equal force to this statutory argument.

UTAH CONST. art. I, § 12. Citing this provision, the State and L.L. ask us to conclude that there can be no blanket "right" to subpoena victim testimony at a preliminary hearing. They argue that if defendants can compel their alleged victims to undergo adverse questioning simply by calling them as their "own" witnesses, then the State's authority to rest on reliable hearsay will never be of any practical effect, and we will rob the constitutional proviso of its intended effect.

¶39 We think both sides overplay their hand to some degree. The cited provision of the Victims' Rights Amendment, for one thing, is not dispositive. It says only that "[n]othing *in this constitution* shall preclude the use of reliable hearsay" in the determination of "probable cause." *Id.* (emphasis added). That leaves room for the revival of a right to compel and confront witnesses as a matter of legislative or judicial policy. *See id.* (allowing the "use of reliable hearsay evidence *as defined by statute or rule*" (emphasis added)). And that leaves open the questions whether and to what extent the terms of the code or our rules preserve a defendant's right to subpoena witnesses.

¶40 Yet the governing rules and statutes cannot be read to enshrine an unfettered "right" to subpoena victim witnesses to testify at a preliminary hearing. Rule 7B(a) speaks to the general authority of a defendant to make his own case at a preliminary hearing. *See* UTAH R. CRIM. P. 7B(a) ("At the conclusion of the state's case, the defendant may testify under oath, call witnesses, and present evidence."). And the ability to "call witnesses" at least arguably encompasses the general power to subpoena witnesses.[16] But any such power is expressly subject to limitation—by the rules themselves as well as the terms and conditions of the Utah Constitution. The threshold limitation appears in criminal rule 14(a)(2), which provides that "[t]he court may quash or modify [a] subpoena if compliance would be *unreasonable*." *Id.* 14(a)(2) (emphasis added). This reasonableness standard vests a degree of discretion in the court. But that discretion must be exercised in light of legal standards that speak specifically to the question presented. And here those standards include provisions that appear both elsewhere in our rules and in the terms and conditions of the 1995 Victims' Rights Amendment. *See* UTAH R. CRIM.

---

[16] Alternatively, the ability to "call witnesses" may just encompass the defendant's right to present evidence through witnesses who agree to appear. We do not resolve this question conclusively here because it is unnecessary to our decision.

P. 14 advisory committee notes (noting the need to consider "a victim's state constitutional right '[t]o be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process'" in assessing the parallel terms of rule 14(b) (alteration in original)).

¶41 We elaborate on the governing limits informing the "unreasonableness" inquiry in Part III(B). Here, we conclude only that (a) neither *Timmerman* nor the constitutional proviso that "[n]othing in this constitution shall preclude the use of reliable hearsay," UTAH CONST. art I, § 12, forecloses limitations on the admissibility of hearsay set forth by rule or statute, but (b) a subpoena of a victim witness may be quashed as "unreasonable" in light of governing provisions of our law that speak to the limited purpose of the preliminary hearing, the low burden of proof that governs the bindover decision, and victims' rights under the Utah Constitution.

¶42 These holdings preserve a meaningful, non-illusory role for a defendant's ability to "call witnesses" at a preliminary hearing under criminal rule 7B.[17] They also obviate the need for us to conclusively resolve the question whether a defendant has a rule-based, statutory, or constitutional "compulsory process" right to subpoena witnesses to testify at a preliminary hearing. We can assume for the sake of argument that such a right exists because even if it does, there is no basis for the conclusion that it is categorical or unlimited. Defendants and their amicus identify no persuasive basis for such a determination. For that reason, we hold that any authority a defendant has to subpoena witnesses at a preliminary hearing—whether by rule, statute, or the constitution—is subject to rule 14(a)(2)'s "unreasonableness" limitation. And we conclude that the unreasonableness inquiry must be performed in light of the provisions set forth below.

---

[17] We see at least two potential problems with the Lopez court's conclusion that a decision granting the motion to quash would render a defendant's ability to "call witnesses" illusory. First, it assumes that "call" equates to "compel." *See supra* ¶¶ 40, 40 n.16. Second, it conflates "witnesses" in general with "alleged victims." A defendant may be limited in his ability to *subpoena* his alleged *victim* (for the reasons laid out in this opinion) without being deprived of a right to "call witnesses" at all.

B. Legal Principles Informing the Inquiry into "Unreasonableness"

¶43 The inquiry into the unreasonableness of a subpoena directed at an alleged victim in a preliminary hearing is informed by a series of important tenets of Utah law.

### 1. The Purpose of the Preliminary Hearing

¶44 The first relevant principle is found in limitations on the purpose of the preliminary hearing. Prior to the ratification of the 1995 Victims' Rights Amendment to the Utah Constitution, this court had held that a preliminary hearing was at least in part "a discovery device"—a "means by which" the defendant could "discover and preserve favorable evidence." *State v. Anderson*, 612 P.2d 778, 784 (Utah 1980). But that "ancillary" function of the preliminary hearing, *id.*, was eliminated by the constitutional amendment ratified in 1995. Under that amendment, the "function" of the preliminary hearing "is limited to determining whether probable cause exists unless otherwise provided by statute." UTAH CONST. art. I, § 12. This amendment was thus a direct override of *Anderson* on this point. *See State v. Goins*, 2017 UT 61, ¶ 44, 423 P.3d 1236 (acknowledging that past cases might need to be revisited if they were decided before the 1995 amendment "limited the purpose of preliminary hearings"). The amendment eliminated the ancillary discovery purpose of the preliminary hearing and limited that proceeding to the determination of probable cause.

### 2. Hearsay Evidence in the Preliminary Hearing

¶45 The 1995 amendment also established that the Utah Constitution would not stand as a bar to "the use of reliable hearsay evidence as defined by statute or rule . . . at any preliminary examination to determine probable cause." UTAH CONST. art I, § 12. This was again an override of an element of our decision in *Anderson*. *Anderson* had established a confrontation right at the preliminary hearing—a right "not only of testing the recollection and sifting the conscience" of an adverse witness, but also "of compelling him to stand face-to-face" with the defendant in court. 612 P.2d at 785. But by "allowing hearsay" evidence to establish probable cause, the 1995 amendment "removed confrontation rights from the preliminary hearing stage and overruled *Anderson's* holding on this point." *State v. Timmerman*, 2009 UT 58, ¶ 15, 218 P.3d 590. This left the "[a]dmission of evidence at preliminary hearings . . . exclusively governed by the reliable hearsay language in the Utah Constitution and rule 1102 of the Utah Rules of Evidence." *Id.* ¶ 16. And rule 1102, in turn, defines "reliable hearsay" to encompass "statement[s] made by a child victim

of physical abuse or a sexual offense" that are "recorded in accordance with [r]ule 15.5 of the Utah Rules of Criminal Procedure." UTAH R. EVID. 1102(b)(7).

### 3. The Burden of Proof at the Preliminary Hearing

¶46 The State bears the burden of establishing the basis for binding a defendant over for trial. *State v. Jones*, 2016 UT 4, ¶ 11, 365 P.3d 1212. But the burden is "light." *Id.* ¶ 12. The only "question at the preliminary hearing is whether the prosecution has presented evidence sufficient to sustain 'probable cause.'" *Id.* To make this showing, the prosecution need not produce evidence sufficient to "support[] a finding of guilt at trial" or even to "eliminate alternative inferences that could be drawn from the evidence in favor of the defense." *Id.* ¶ 13 (citations and internal quotation marks omitted). All that is necessary is a presentation of "evidence sufficient to support a reasonable belief that an offense has been committed and that the defendant committed it." *State v. Schmidt*, 2015 UT 65, ¶ 17, 356 P.3d 1204 (citation and internal quotation marks omitted).

¶47 Accordingly, it is generally "inappropriate for a magistrate to weigh credible but conflicting evidence at a preliminary hearing . . . ." *State v. Virgin*, 2006 UT 29, ¶ 24, 137 P.3d 787. This hearing "is not a trial on the merits" but "a gateway to the finder of fact." *Id.* (citation and internal quotation marks omitted). With this in mind, the magistrate may "disregard or discredit" evidence only if it is "wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's claim." *Id.* (citation and internal quotation marks omitted).

¶48 Under this low bar, it may be difficult for the defense to overcome a *prima facie* showing of probable cause. Even an alleged victim's recantation may sometimes be insufficient, given that the magistrate "must view all evidence in the light most favorable to the prosecution and draw all reasonable inferences in favor of the prosecution." *See Schmidt*, 2015 UT 65, ¶ 4 (footnote and internal quotation marks omitted). The governing standard is the one we articulated in *Schmidt*: The magistrate is not "to evaluate the totality of the evidence in search of the most reasonable inference at a preliminary hearing"; instead, the "magistrate has discretion to decline bindover only where the facts presented by the prosecution provide no more than a basis for speculation." *Id.* ¶ 18 (citations and internal quotation marks omitted).

### 4. The Rights of Victims at the Preliminary Hearing

¶49 Finally, crime victims have extensive rights in criminal justice proceedings in Utah. The 1995 amendment to the Utah Constitution

established a right of crime victims "[t]o be treated with fairness, respect, and dignity," and a right to "be free from harassment and abuse throughout the criminal justice process." UTAH CONST. art I, § 28(1)(a). These rights are further delineated by statute. Under Utah Code section 77-38-2, the victim's right to "fairness" encompasses the right to be treated "reasonably, even-handedly, and impartially," *id.* § 77-38-2(3), the right to be free from "abuse" is a right to be free from treatment that would "injure, damage, or disparage," *id.* § 77-38-2(1), and the right to be free from "harassment" is the right to be free from being treated "in a persistently annoying manner," *id.* § 77-38-2(4). Also relevant to this case is the neighboring provision that states that "[c]hildren have the right to protection from physical and emotional abuse during their involvement with the criminal justice process." *Id.* § 77-37-4(1).

## C. The Standard for Determining Whether a Subpoena of a Victim Witness at a Preliminary Hearing is "Unreasonable"

¶50 The above sets the stage for our articulation of the standard for judging whether a subpoena directed to an alleged victim at a preliminary hearing is unreasonable. Four principles inform our statement of the standard: (1) the sole purpose of the preliminary hearing is the determination of probable cause; (2) reliable hearsay evidence—including statements made by a child victim of abuse under the terms of rule 1102—may be sufficient to establish probable cause; (3) the probable cause standard—requiring evidence sufficient to support a reasonable belief that an offense has been committed and that the defendant committed it—leaves little room for the magistrate to judge witness credibility and is difficult for a defendant to overcome; and (4) crime victims have a right to be treated with "fairness, respect, and dignity," and to "be free from harassment and abuse throughout the criminal process." UTAH CONST. art I, § 28(1)(a).

¶51 These legal principles foreclose the defendants' assertion of a "right" to compel a victim to testify at a preliminary hearing without showing how such testimony could affect the prosecution's *prima facie* showing of probable cause. A subpoena in service of such a right would be unreasonable in light of the principles set forth above. It would exceed the bounds of the constitutional purpose of the preliminary hearing, effectively override the law endorsing the sufficiency of hearsay evidence in establishing probable cause, supersede the governing standard for establishing probable cause, and ultimately intrude on the constitutional and statutory rights of victims.

¶52 The last point is sustained by extensive social science material put forward in the briefing submitted by L.L. That material identifies some patterns that typically appear in the interactions between a perpetrator and victim of child sex abuse: a perpetrator who "desensitize[s]" a child victim after "befriend[ing]" her by increasing levels of abuse from minimal acts to more "invasive" ones; a child who becomes so emotionally traumatized that she finds it difficult to resist or disclose the abuse; and a period of delay in reporting that may cause the child to feel somehow responsible for the abuse or believe that it has become consensual. *See* Thomas D. Lyon & Julia A. Dente, *Child Witnesses and the Confrontation Clause*, 102 J. CRIM. L. & CRIMINOLOGY 1181, 1203–12 (2012). The social science literature also establishes that the experience of testifying about past abuse may cause substantial emotional trauma for victims of child sex abuse. *See* Jim Henry, *System Intervention Trauma to Child Sexual Abuse Victims Following Disclosure*, 12 J. INTERPERSONAL VIOLENCE 499, 501, 508 (1997). And it indicates that forcing such victims to "continually repeat their abuse stories" can "connect[] children with painful memories and may reinforce the internalization of guilt and shame experienced in sexual abuse," *id.* at 508, and "reduce the child's resilience and make the child more susceptible to distress." L. Christine Brannon, *The Trauma of Testifying in Court for Child Victims of Sexual Assault v. The Accused's Right to Confrontation*, 18 L. & PSYCHOL. REV. 439, 442 (1994).

¶53 The above points are controlling. A defendant has the general authority to "call witnesses" at a preliminary hearing, but a subpoena compelling alleged victims to testify is *per se* "unreasonable" when it seeks testimony that is immaterial to the probable-cause determination, would obviate the legal sufficiency of hearsay evidence, and would unnecessarily intrude on the rights of victims.

¶54 With this in mind, we conclude that the starting point for assessing the reasonableness of a subpoena aimed at compelling an alleged victim of sex abuse to testify at a preliminary hearing is a *prima facie* determination of probable cause. *See* UTAH R. CRIM. P. 7B(a) ("*At the conclusion of the state's case*, the defendant may . . . call witnesses[] and present evidence." (emphasis added)). A decision on whether to quash such a subpoena, in other words, should come after the prosecution presents its case and the magistrate is able to determine whether the prosecution has presented evidence that at that stage would sustain a determination of probable cause. *See id.*; *see also* UTAH CONST. art. I, § 12 ("Where the defendant is otherwise entitled to a preliminary examination, the function of that examination is limited to determining whether probable cause exists unless otherwise

provided by statute."). If the magistrate determines that this is so, the inquiry then turns to whether the subpoena of the alleged victim is unreasonable. UTAH R. CRIM. P. 14(a)(2) ("The court may quash or modify the subpoena if compliance would be unreasonable."). That assessment should be made on the basis of the defendant's showing that additional, live testimony from the victim is necessary to present evidence on a specific point material to the probable-cause determination, and that is reasonably likely to defeat the State's *prima facie* showing of probable cause.[18]

¶55 The above sequencing of this inquiry will best balance the competing interests and rights of both the defendant and the alleged victim. On one hand, it will preserve the defendant's opportunity to "call witnesses" under criminal rule 7B(a). On the other hand, it will maintain the court's power to quash a subpoena that would be "unreasonable" as applied to a given victim after accounting for the circumscribed function of the preliminary hearing, the low probable-cause standard, and victims' rights.

¶56 Our standard speaks to the grounds on which a subpoena should be quashed as a matter of law—where a *prima facie* showing of probable cause has been established through a victim's reliable hearsay, and where the defendant is unable to identify a need to present additional, live testimony from the victim on a specific point that is material to the probable-cause determination and reasonably likely to defeat the State's *prima facie* showing. But this standard is not exhaustive. It should not be read to exclude other means and measures that a court might undertake under criminal rule 14(a)(2). That rule speaks of the power of the court to "quash *or modify*" a subpoena "if compliance would be unreasonable." *Id.* (emphasis added). And the court may see a need to further modify or limit a subpoena on a case-by-case basis.

## IV. DISPOSITION

¶57 We now have only to dispose of the cases at issue. Applying the above standard, we reverse the Lopez court and affirm the Nielsen court.

¶58 In the Lopez case, the court denied the motion to quash on the basis of an essentially unfettered right to subpoena witnesses

---

[18] Such a showing would be difficult, if not impossible, for example, where the grounds to be covered by the live witness could just as effectively be presented by other means.

under criminal rule 7B(a). That was error. We reverse that decision on the ground that Lopez made no attempt to show that additional, live testimony from the alleged victim was material to the probable-cause determination—let alone that there was no other way to present that evidence or that such testimony was reasonably likely to defeat the State's *prima facie* showing of probable cause. Instead, he claimed that he did not need to justify the subpoena in any way—he was simply "entitled" to "find out some more of the details," even if L.L.'s compelled testimony ultimately supported rather than undermined the State's probable-cause showing. Because Lopez refused to explain why compelling L.L.'s testimony was necessary and reasonably likely to defeat the State's *prima facie* showing of probable cause, we reverse the court's denial of L.L.'s motion to quash.

¶59 We affirm the Nielsen court on similar grounds. Admittedly, the Nielsen court granted the State's motion to quash A.N.'s subpoena at the start of the preliminary hearing, before the State had even presented its evidence. But when Nielsen objected, he did not name anything specific that he hoped A.N.'s testimony would provide. He just baldly asserted that he was entitled to "test the State's evidence." This point was further reinforced in a telephone conference in which Nielsen's counsel openly acknowledged that "one of the difficult issues" in the case was that they did not know "precisely what [A.N.] would say."

¶60 Nielsen's all-or-nothing position—that he had "an unrestrained right" to call the alleged victim "as a witness at his preliminary hearing"—was wrong. And the magistrate was accordingly correct to grant the motion to quash under these circumstances. We affirm the decision in the Nielsen case on that limited basis, without any intent to influence any future bindover decision under the probable cause standard.

## V. CONCLUSION

¶61 These cases arise at the difficult intersection between the rights of defendants and the rights of alleged victims in preliminary hearings. We hold that any power a defendant has to compel a victim witness to testify at a preliminary hearing is limited by the court's authority to quash unreasonable subpoenas. And we conclude that that reasonableness inquiry must be informed by the standards that govern preliminary hearings and the rights that our law guarantees for crime victims.

———————